Nathan G. Steele, OSB No. 004386
THE STEELE LAW FIRM, P.C.
125 NW Greeley Avenue
Bend, OR 97703
Telephone: (541) 647-1812
Email: ngs@steelefirm.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CYNTHIA F. TISHER**, individually, and **J. L. T.**, a minor, by and through his *proposed* guardian ad litem, Cynthia F. Tisher,<br><br>Plaintiffs,<br><br>   v.<br><br>**THE BOEING COMPANY**, a foreign business corporation, **SPIRIT AEROSYSTEMS, INC**., a foreign business corporation, **QUIK TEK MACHINING, LLC**, a foreign limited liability company, and **ALASKA AIRLINES, INC**., a foreign business corporation,<br><br>Defendants. | Case No. 3:25-cv-1984<br><br>**CIVIL COMPLAINT**<br><br>**(Product Liability, Negligence, Negligence *Per Se*, Breach of the Duty of a Common Carrier, Breach of the Implied Warranty of Merchantability)**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiffs Cynthia F. Tisher, individually, and J.L.T., a minor, by and through his proposed guardian ad litem, Cynthia F. Tisher, (collectively, "Plaintiffs"), allege as follows:

## I.    INTRODUCTION

1.    Plaintiffs bring this action for personal injuries and related damages arising from the

in-flight separation of a Mid-Exit-Door ("MED") plug from a 737-MAX aircraft, causing

an explosive cabin depressurization during Alaska Airlines Flight 1282 on January 5, 2024.

## II.  JURISDICTION AND VENUE

2.   This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this

action is between citizens of different States, and the amount in controversy exceeds

$75,000, exclusive of interest and costs. Plaintiffs are citizens and residents of the State of

Oregon. At all times material:

   a.  Defendant The Boeing Company ("Defendant Boeing") is incorporated under the

   laws of the State of Delaware and maintained its principal place of business in

   Arlington, Virginia;

   b.  Defendant Spirit AeroSystems, Inc. ("Defendant Spirit") is incorporated under the

   laws of the State of Delaware and maintained its principal place of business in

   Wichita, Kansas;

   c.  Defendant Quik Tek Machining, LLC ("Defendant Quik Tek") is organized under

   the laws of the State of Kansas and maintained its principal place of business in

   Wichita, Kansas; and

   d.  Defendant Alaska Airlines, Inc. ("Defendant Alaska") is incorporated under the

   laws of the State of Alaska and maintained its principal place of business in

   Seattle, Washington.

   Accordingly, complete diversity exists between the parties.

3.   Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b)(1)–(2) because

Defendants transact substantial business within this District, and a substantial part of the

events or omissions giving rise to these claims—including ticketing, travel arrangements,

and post-incident medical treatment—occurred in this District.

4.    The total amount in controversy—including Plaintiffs' claimed economic, non-economic, and punitive damages—exceeds $75,000, exclusive of interest and costs, thereby satisfying the jurisdictional requirements of 28 U.S.C. § 1332(a).

## III.    PARTIES

5.    Plaintiff Cynthia F. Tisher ("Mother") is an adult citizen and resident of the State of Oregon. She brings this action in her individual capacity and, upon court appointment, in a representative capacity as guardian ad litem for her minor son, J.L.T.

6.    Plaintiff J.L.T. ("Son") is a minor who brings this action by and through his proposed guardian ad litem, Mother, pursuant to Federal Rule of Civil Procedure 17(c) and District of Oregon Local Rule 17-1. A motion for appointment of Mother as guardian ad litem, together with her supporting declaration and proposed order, is being filed contemporaneously with this Complaint. Upon the Court's entry of an order of appointment, Mother will serve as guardian ad litem for J.L.T. in this action.

7.    On January 5, 2024, Plaintiffs were fare-paying passengers aboard Alaska Airlines Flight 1282 (the "Incident Flight") and sustained physical and psychological injuries arising from an explosive cabin depressurization that occurred in the airspace above Washington County, Oregon.

8.    At all times material to this action, Defendant Boeing operated as a manufacturer of commercial aircraft within the United States, including 737 MAX aircraft manufactured at its facility in Renton, Washington.

9.    At all times material to this action, Defendant Spirit designed and manufactured products and components for commercial aircraft, including MED plugs and fuselage assemblies used in Boeing 737 MAX aircraft, at its facility in Wichita, Kansas.

10. At all times material to this action, Defendant Quik Tek operated as a machining and manufacturing company engaged in producing fuselage framing for Boeing 737 MAX aircraft, including the installation of framing rivets and related structures, at its facility in Wichita, Kansas.

11. At all times material to this action, Defendant Alaska operates as a commercial airline and common carrier providing air transportation services to fare-paying passengers, including passengers residing in and traveling to and from the State of Oregon.

12. At all times relevant to this action, each Defendant employed, retained, or otherwise engaged individuals and entities who acted as its employees, agents, servants, contractors, and/or managers (collectively, the "Boeing Employees," "Spirit Employees," "Quik Tek Employees," and "Alaska Employees"). Each such person or entity acted within the course and scope of their employment, agency, service, or contractual relationship with the respective Defendant, and in furtherance of that Defendant's business interests. The acts and omissions alleged herein were committed by and through such persons, and each Defendant is legally responsible for those acts and omissions under the doctrines of respondeat superior, agency, apparent authority, and all other applicable principles of vicarious liability recognized by law.

## IV. ALLEGATIONS COMMON TO ALL CLAIMS

13. Plaintiffs re-allege and incorporate by reference each of the allegations set forth above as though fully restated herein.

14. From approximately 2015 to the present, Defendant Boeing has been the subject of multiple federal investigations and enforcement actions concerning systemic manufacturing and quality-control deficiencies on its 737 and 737 MAX production lines. Those investigations—conducted by the Federal Aviation Administration

("FAA"), Department of Justice ("DOJ"), Securities and Exchange Commission ("SEC"), National Transportation Safety Board ("NTSB"), and the United States Senate—have resulted in compliance agreements, consent orders, and monetary penalties and fines exceeding $4 billion, and have identified pervasive lapses in Boeing's safety management and quality management systems.

15.   At all relevant times, Defendant Alaska was on actual or constructive notice of the deficiencies described in paragraph 14 above, the related enforcement actions, and publicly reported findings exposing manufacturing and safety deficiencies affecting the airworthiness of Boeing 737 MAX aircraft.

16.   In or about October 2022, Defendant Alaska entered into an agreement with Defendant Boeing to purchase fifty-two 737 MAX aircraft, including the aircraft involved in this action (the "Incident Aircraft").

17.   Upon information and belief, in or about 2023, Defendant Quik Tek manufactured one or more edge frames intended for integration into the fuselage of the Incident Aircraft. During that manufacturing process, Quik Tek installed defective or improperly seated rivets in one such frame (the "Defective Frame"). Upon information and belief, Quik Tek either failed to conduct a required inspection of the Defective Frame or, despite inspection, negligently approved it as conforming to applicable specifications. The Defective Frame was thereafter shipped from Quik Tek's Wichita, Kansas facility with the defective rivets in place, rendering it unreasonably dangerous and unsuitable for incorporation into a commercial aircraft fuselage.

18.   Defendant Spirit took delivery of the Defective Frame at its Wichita, Kansas facility and incorporated it into the port-side fuselage section of the Incident Aircraft without correcting or replacing the defective rivets. Defendant Spirit subsequently installed the

MED plug immediately aft of the Defective Frame. In doing so, Defendant Spirit failed to ensure that the fuselage assembly complied with applicable design specifications, quality-control requirements, and airworthiness standards. As a result, the fuselage section delivered by Defendant Spirit to Defendant Boeing was unreasonably dangerous and defective when it left Spirit's control.

19.  Defendant Boeing took delivery of the fuselage section of the Incident Aircraft from Defendant Spirit at Boeing's Renton, Washington facility, with the Defective Frame in place. During assembly, Boeing employees identified the defect and notified on-site Spirit employees responsible for replacing the defective rivets. To perform that repair, removal of the MED plug was required. Boeing personnel were responsible for removing and reinstalling the MED plug, including the retention bolts securing it in place. Despite the critical nature of that task, Defendant Boeing failed to provide its employees with any written procedures, training, or instructions governing the proper removal and reinstallation of the MED plug.

20.   Upon information and belief, Boeing employees removed the MED plug, and Spirit employees replaced the defective rivets. Boeing employees then reinstalled the MED plug in its original location but failed to reinstall the retention bolts required to secure it to the fuselage of the Incident Aircraft. Boeing personnel did not create, maintain, or retain any written record of the removal or reinstallation, and, upon information and belief, destroyed or failed to preserve such documentation. The MED plug was positioned immediately adjacent to what became passenger row 26 on the Incident Aircraft.

21.  Boeing employees either conducted an inadequate inspection of the MED-plug reinstallation or failed to inspect it altogether. Despite that omission, Boeing personnel certified or otherwise approved the work as complete, allowing production of the Incident

Aircraft to proceed to final assembly. As a result, the Incident Aircraft departed Boeing's Renton, Washington facility in a defective and unreasonably dangerous condition, unfit for safe commercial operation.

22. On or about August 19, 2023, Plaintiffs purchased two passenger tickets from Defendant Alaska for travel on the Incident Flight.

23. On or about October 31, 2023, Defendant Alaska took delivery of the Incident Aircraft from Defendant Boeing and placed it into commercial service on or about November 11, 2023. The aircraft completed approximately 154 revenue flights prior to the Incident Flight. During those operations, the unsecured MED plug gradually migrated upward, leaving visible scoring and witness marks later documented by the NTSB.

24. Between December 7, 2023, and January 4, 2024, the Incident Aircraft's cabin-pressurization system repeatedly generated "AUTO FAIL" warnings during flight operations. On each occasion, Alaska Airlines personnel manually reset the system and returned the aircraft to service without identifying or correcting the underlying cause. On January 4, 2024, an Alaska mechanic documented and reported the recurring pressurization faults and recommended grounding the aircraft pending further inspection. Defendant Alaska nevertheless elected to continue limited passenger operations rather than comply with that recommendation.

25. On January 5, 2024, Plaintiffs boarded Alaska Airlines Flight 1282 operated by Defendant Alaska. Plaintiff Mother occupied seat 25B, and Plaintiff Son occupied seat 25A, adjacent to the interior panel concealing the MED plug. Approximately six minutes after takeoff, while the aircraft was climbing through 14,380 feet at a speed exceeding 300 miles per hour, the MED plug separated from the fuselage, causing an explosive decompression of the Incident Aircraft. The sudden loss of cabin pressure violently twisted and deformed the

base of Son's seat toward the opening, exposing both Plaintiffs to extreme windblast,

debris, and near-freezing temperatures. Plaintiffs sustained acute psychological trauma and

physical injury, each witnessing the other in immediate peril.

26. Following the decompression, Alaska Airlines flight-crew members failed to render prompt

assistance to Plaintiffs. When it became apparent that no crew assistance was forthcoming,

other passengers intervened and helped Plaintiffs move to safer locations within the cabin.

According to statements later provided to NTSB investigators, an Alaska flight attendant

admitted that she "was screaming at them to get in [their] seats," rather than rendering aid

to the Plaintiffs.

## V. CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF – PRODUCT LIABILITY**
*(Against Defendants The Boeing Company, Spirit AeroSystems, Inc., and Quik Tek Machining, LLC)*

27. Plaintiffs re-allege and incorporate by reference each of the allegations set forth above as

though fully restated herein.

28. At all times material, Defendant Boeing was engaged in the business of designing,

manufacturing, assembling, testing, and selling commercial aircraft, including the 737

MAX line and the Incident Aircraft. Defendants Spirit and Quik Tek were engaged in the

business of designing, manufacturing, and supplying component parts and assemblies for

Boeing 737 MAX aircraft. Defendant Spirit was further responsible for the assembly of

fuselage structures used in such aircraft, including the fuselage installed on the Incident

Aircraft.

29. The Incident Aircraft was placed into the stream of commerce in a defective condition

unreasonably dangerous to foreseeable users and passengers, due to defects in its design,

manufacture, assembly, inspection, and quality control, as described above. The aircraft

failed to conform to the design specifications, quality standards, and representations of Defendants Boeing, Spirit, and Quik Tek, and remained in an unreasonably dangerous condition at the time it left their possession and control.

30. Pursuant to ORS 30.900 et seq., Defendants Boeing, Spirit, and Quik Tek owed statutory duties to foreseeable users and consumers, including commercial air passengers such as Plaintiffs, to design, manufacture, assemble, inspect, and test aircraft and component parts so as to ensure that they were reasonably safe for their intended and foreseeable uses. Plaintiffs are members of the class of persons the statute was designed to protect, and the injuries they sustained are of the type that ORS 30.900 et seq. was enacted to prevent.

31. The Incident Aircraft reached Defendant Alaska—and ultimately Plaintiffs—without substantial change in the condition in which it was manufactured and sold. At all relevant times, the aircraft posed dangers beyond those that an ordinary commercial air passenger would reasonably contemplate when using the aircraft in its intended and foreseeable manner.

32. The defective condition of the Incident Aircraft—arising from its defective design, manufacture, assembly, and inspection—was a direct and proximate cause of the in-flight separation of the MED plug during the Incident Flight. That separation caused an explosive decompression of the aircraft and resulted in Plaintiffs' physical injuries and severe emotional and psychological trauma.

33. Defendants Boeing, Spirit, and Quik Tek are strictly liable in tort under ORS 30.900– 30.925 for the injuries and damages proximately caused by the defective and unreasonably dangerous condition of the Incident Aircraft. Plaintiffs have incurred, and will continue to incur, economic damages, including medical expenses and related out-of-pocket losses in amounts to be proven at trial.

34.    As a further direct and proximate result of the conduct and negligence of Defendants

Boeing, Spirit, and Quik Tek, as described above, Plaintiffs have suffered and continue to

suffer substantial non-economic damages, including pain, suffering, emotional distress,

and loss of enjoyment of life.

35.    The total of Plaintiffs' economic and non-economic damages exceeds $75,000, exclusive

of interest and costs, and will be established by competent evidence at trial.

36.    The acts or omissions of Defendants Boeing, Spirit, and Quik Tek, as alleged above,

demonstrate a reckless and outrageous indifference to a highly unreasonable risk of harm

and a conscious indifference to the health, safety, and welfare of commercial air

passengers, including Plaintiffs. Plaintiffs are therefore entitled to an award of punitive

damages against Defendants Boeing, Spirit, and Quik Tek in an amount sufficient to

punish and deter such conduct, and which, when combined with compensatory damages,

further confirming that the amount in controversy exceeds the jurisdictional minimum

under 28 U.S.C. § 1332(a).

**SECOND CLAIM FOR RELIEF**

**COUNT I – NEGLIGENCE**
(*Against Defendants The Boeing Company, Spirit AeroSystems, Inc., and Quik Tek Machining, LLC*)

37.    Plaintiffs re-allege and incorporate by reference each of the allegations set forth above as

though fully restated herein.

38.    At all times material, Defendants Boeing, Spirit, and Quik Tek each owed Plaintiffs, as

foreseeable users and passengers of the Incident Aircraft, a duty to exercise reasonable care

in the design, manufacture, assembly, inspection, and delivery of aircraft and component

parts, and to ensure that such aircraft were airworthy, free from dangerous defects, and

compliant with applicable federal aviation standards, including those promulgated under 14

C.F.R. Part 21 et seq. and the Federal Aviation Act of 1958 (49 U.S.C. § 40101 et seq.).

39. Defendants Boeing, Spirit, and Quik Tek breached their duties through acts and omissions of negligence, including but not limited to the following:

    a. Failing to design and engineer aircraft components that were airworthy and safe for foreseeable use;

    b. Failing to manufacture and assemble the Incident Aircraft and its components in conformance with design specifications and applicable airworthiness standards;

    c. Failing to employ, qualify, and retain competent personnel to design, manufacture, assemble, repair, and inspect airworthy aircraft and component parts;

    d. Failing to adequately train and supervise employees and contractors responsible for the design, manufacture, inspection, and repair of aircraft components;

    e. Failing to conduct adequate inspections, testing, and quality assurance to ensure the airworthiness of the Incident Aircraft prior to its delivery;

    f. Failing to properly document, verify, and inspect the removal and reinstallation of the MED plug and its retaining bolts;

    g. Failing to identify or correct the unreasonably dangerous condition of the Incident Aircraft after repairs were performed;

    h. Authorizing the continued manufacture and sale of the Incident Aircraft despite known or discoverable defects that rendered it unairworthy; and

    i. Delivering or approving delivery of an aircraft for commercial service that was unairworthy and unreasonably dangerous to passengers.

40. As a direct and proximate result of Defendants Boeing, Spirit, and Quik Tek's acts and omissions alleged above, the MED plug separated from the fuselage of the Incident

Aircraft during the Incident Flight, causing an explosive decompression that resulted in foreseeable physical injuries and severe emotional and psychological trauma to Plaintiffs.

41.    Defendants Boeing, Spirit, and Quik Tek's negligence was a substantial factor in causing Plaintiffs' injuries and damages. Plaintiffs have incurred, and will continue to incur, economic damages, including medical expenses and related out-of-pocket losses, in amounts to be proven at trial.

42.    As a further direct and proximate result of the negligence of Defendants Boeing, Spirit, and Quik Tek, Plaintiffs have suffered and continue to suffer substantial non-economic damages, including pain, suffering, emotional distress, and loss of enjoyment of life.

43.    The total of Plaintiffs' economic and non-economic damages exceeds $75,000, exclusive of interest and costs, and will be established by competent evidence at trial.

44.    The acts or omissions of Defendants Boeing, Spirit, and Quik Tek as alleged above demonstrate a reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to the health, safety, and welfare of commercial air passengers, including Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages against Defendants Boeing, Spirit, and Quik Tek in an amount sufficient to punish and deter such conduct, and which, when combined with compensatory damages, further confirming that the amount in controversy exceeds the jurisdictional minimum under 28 U.S.C. § 1332(a).

**COUNT II – NEGLIGENCE PER SE**
*(Against Defendant The Boeing Company)*

45.    Plaintiffs re-allege and incorporate by reference each of the allegations set forth above as though fully restated herein.

46.    Under Oregon law, violation of a statute or administrative regulation adopted to protect a

specific class of persons against a specific type of harm constitutes negligence *per se*.

47.    At all times material, Defendant Boeing held an FAA Type Certificate for the design of the Boeing 737 MAX aircraft. As the Type-Certificate holder, Boeing was required to manufacture each 737 MAX aircraft, including the Incident Aircraft, in strict conformance with the approved type design and all applicable Federal Aviation Regulations ("FARs") governing design, inspection, and airworthiness.

48.    As the Type-Certificate holder and production-approval holder, Defendant Boeing was subject to, and required to comply with FARs, including, but not limited to:

   a.  14 C.F.R. § 21.3 - requiring immediate reporting to the FAA of any defect or failure that Boeing determines could result in a significant structural defect or failure in an aircraft that has left Boeing's quality-control system;

   b. 14 C.F.R. § 21.20 - requiring demonstration of compliance with all applicable airworthiness requirements before issuance of a Type Certificate;

   c.  14 C.F.R. § 21.33(b) - requiring Boeing to perform all inspections and tests necessary to ensure that:

      (1)  each product complies with airworthiness and design requirements;

      (2) materials and components conform to the approved type design; and

      (3) manufacturing processes, construction, and assembly conform to those approved by the FAA;

   d.  14 C.F.R. § 25.605 - requiring that fabrication methods produce a consistently sound structure; and

   e.  14 C.F.R. § 43.3 - restricting the performance of any structural alteration, including removal or reinstallation of fuselage panels, to certificated mechanics or persons working under their supervision.

49.     Each of the foregoing regulations was in effect at the time of the manufacture and assembly of the Incident Aircraft. These regulations were enacted for the protection of a class of persons that includes commercial air passengers, and to prevent the type of harm—loss of structural integrity and explosive decompression—that occurred during the Incident Flight.

50.     Defendant Boeing's violations of the FARs identified above constitute negligence *per se* under Oregon law, as those regulations were designed to protect commercial air passengers, including Plaintiffs, from the type of injuries they sustained.

51.     Defendant Boeing's violations of the FARs identified above were a substantial factor and proximate cause of the mid-air separation of the MED plug, which in turn caused explosive decompression and resulted in Plaintiffs' foreseeable physical injuries and severe emotional and psychological trauma.

52.     As a direct and proximate result of Defendant Boeing's negligence *per se*, Plaintiffs have incurred, and will continue to incur, economic damages, including medical expenses and related out-of-pocket losses, in amounts to be proven at trial.

53.     As a further direct result of Defendant Boeing's negligence *per se*, Plaintiffs have suffered and continue to suffer substantial non-economic damages, including pain, suffering, emotional distress, and loss of enjoyment of life.

54.     The total of Plaintiffs' economic and non-economic damages exceeds $75,000, exclusive of interest and costs, and will be established by competent evidence at trial.

55.     Defendant Boeing's persistent violations of the FARs identified above demonstrate a reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious disregard to the health, safety, and welfare of commercial air passengers, including Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages against Defendant Boeing in an amount sufficient to punish and deter such conduct, and which,

when combined with compensatory damages, further confirming that the amount in controversy exceeds the jurisdictional minimum under 28 U.S.C. § 1332(a).

## COUNT III – NEGLIGENCE PER SE
(*Against Defendant Spirit AeroSystems, Inc*)

56.     Plaintiffs re-allege and incorporate by reference each of the allegations set forth above as though fully restated herein.

57.     At all times material, Spirit held an FAA Production Certificate, requiring it to design, manufacture, and assemble aircraft parts and fuselages in conformance with the approved Boeing 737 MAX Type Certificate, as described in Paragraphs 47 and 48 above.

58.     As a Production-Certificate holder, Defendant Spirit was subject to, and required to comply with, FARs, including, but not limited to:

    a.  14 C.F.R. § 21.137 - requiring Defendant Spirit to establish and maintain a quality-assurance system ensuring that each product and article conforms to its approved design and is in a condition for safe operation, including appropriate inspection and testing;

    b.   14 C.F.R. § 21.146 - requiring that each product or article produced under Defendant Spirit's Production Certificate conform to its approved design and be in a condition for safe operation;

    c.  14 C.F.R. § 21.150 - requiring immediate written notification to the FAA of any change affecting the inspection, conformity, or airworthiness of Spirit's products;

    d.  14 C.F.R. § 25.603(b) - requiring that materials used in structural parts affecting safety meet approved specifications for suitability and durability; and

    e.   14 C.F.R. § 25.605 - requiring fabrication methods that produce a consistently sound and safe structure.

59.    Each of the foregoing regulations was in effect at the time Defendant Spirit manufactured and assembled the fuselage of the Incident Aircraft, and subsequently repaired Defective Frame. These regulations were enacted to protect a class of persons that includes commercial air passengers, and to prevent the precise type of harm—loss of structural integrity and explosive decompression—that occurred on the Incident Flight.

60.    Defendant Spirit's violations of the FARs identified above constitute negligence *per se* under Oregon law, as those regulations were designed to protect commercial air passengers, including Plaintiffs, from the injuries they suffered.

61.    Defendant Spirit's violations of the FARs identified above were a substantial factor and proximate cause of the mid-air separation of the MED plug, causing the explosive decompression and Plaintiffs' foreseeable physical injuries and severe emotional and psychological trauma.

62.    As a direct and proximate result of Defendant Spirit's negligence *per se*, Plaintiffs have incurred, and will continue to incur, economic damages, including medical expenses and related out-of-pocket losses, in amounts to be proven at trial.

63.    As a further direct and proximate result of Defendant Spirit's negligence *per se*, Plaintiffs have suffered and continue to suffer substantial non-economic damages, including pain, suffering, emotional distress, and loss of enjoyment of life.

64.    The total of Plaintiffs' economic and non-economic damages exceeds $75,000, exclusive of interest and costs, and will be established by competent evidence at trial.

65.    Defendant Spirit's persistent violations of the FARs identified above demonstrate a reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to the health, safety, and welfare of commercial air passengers, including Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages against

Defendant Spirit in an amount sufficient to punish and deter such conduct, and which, when combined with compensatory damages, further confirming that the amount in controversy exceeds the jurisdictional minimum under 28 U.S.C. § 1332(a).

**COUNT IV – NEGLIGENCE PER SE**
(*Against Defendant Quik Tek Machining, LLC*)

66.   Plaintiffs re-allege and incorporate by reference each of the allegations set forth above as though fully restated herein.

67.   Upon information and belief, at all times material, Defendant Quik Tek operated under an FAA Parts Manufacturer Approval ("PMA"), which required it to design and manufacture parts in conformance with the approved Boeing 737 MAX Type Certificate, described in Paragraphs 47 and 48 above. As a PMA holder, Defendant Quik Tek was obligated to ensure that all parts produced met applicable FARs governing design conformity and airworthiness.

68.   Under its PMA, Defendant Quik Tek was required to comply with FARs, including, but not limited to:

   a. 14 C.F.R. § 21.303(b) - requiring Defendant Quik Tek to perform all inspections and tests necessary to determine that:

   (1) each article complies with applicable airworthiness requirements;

   (2) materials conform to approved design specifications;

   (3) each article conforms to its approved design; and

   (4) manufacturing processes, construction, and assembly conform to the approved design;

   b. 14 C.F.R. § 21.307 - requiring Defendant Quik Tek to comply with § 21.137 to establish and maintain a quality management system ensuring that each product or article conforms to its approved design and is in a condition for safe operation;

      c.  14 C.F.R. § 21.316(c) - requiring Quik Tek to ensure that each article produced

           under its PMA conforms to its approved design and is in a condition for safe

           operation; and

      d.  14 C.F.R. § 25.603(b) - requiring that materials used in structural parts affecting

           safety meet approved specifications for suitability and durability.

69.    Each of the foregoing regulations was in effect at the time Defendant Quik Tek manufactured the Defective Frame incorporated into the Incident Aircraft. These regulations were enacted to protect a class of persons, including commercial air passengers, and to prevent the very type of harm—loss of structural integrity and explosive decompression—that occurred on the Incident Flight.

70.    Defendant Quik Tek's violations of the FARs identified above constitute negligence *per se* under Oregon law, as those regulations were designed to protect commercial air passengers, including Plaintiffs, from the injuries they suffered.

71.    Defendant Quik Tek's violations of the FARs identified above were a substantial factor and proximate cause of the mid-air ejection of the MED plug, causing the explosive decompression and Plaintiffs' foreseeable physical injuries and severe emotional and psychological trauma.

72.    As a direct and proximate result of Defendant Quik Tek's negligence *per se*, Plaintiffs have incurred, and will continue to incur, economic damages, including medical expenses and related out-of-pocket losses in amounts to be proven at trial

73.    As a further direct and proximate result of Defendant Quik Tek's negligence *per se*, Plaintiffs have suffered and continue to suffer substantial non-economic damages, including pain, suffering, emotional distress, and loss of enjoyment of life.

74.    The total of Plaintiffs' economic and non-economic damages exceeds $75,000, exclusive

of interest and costs, and will be established by competent evidence at trial.

75.    Defendant Quik Tek's violations of the FARs identified above demonstrate a reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to the health, safety, and welfare of commercial air passengers, including Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages against Defendant Quik Tek in an amount sufficient to punish and deter such conduct, and which, when combined with compensatory damages, further confirming that the amount in controversy exceeds the jurisdictional minimum under 28 U.S.C. § 1332(a).

**THIRD CLAIM FOR RELIEF**

**BREACH OF THE DUTY OF A COMMON CARRIER**
(*Against Defendant Alaska Airlines Inc.*)

76.    Plaintiffs re-allege and incorporate by reference each of the allegations set forth above as though fully restated herein.

77.    This claim is brought under Oregon law for negligence arising from Defendant Alaska's breach of its duty as a common carrier to exercise the highest degree of care for the safety of its passengers.

78.    At all times material, Defendant Alaska held an Air Carrier Operating Certificate issued under 49 U.S.C. § 44705 and operated as a commercial air carrier transporting fare-paying passengers, including Plaintiffs. As a common carrier, Defendant Alaska owed its passengers the highest degree of care consistent with the practical operation of its business, and was required to exercise utmost vigilance, foresight, and precaution to ensure their safe transportation. This heightened duty of care extended to the hiring, training, supervision, and conduct of its flight crews, maintenance personnel, and other agents responsible for passenger safety.

79.    Defendant Alaska breached its duty of care as a common carrier in one or more of the

following particulars:

> a. In purchasing and operating the Incident Aircraft despite actual or constructive
>
> knowledge of systemic safety deficiencies in the Boeing 737 MAX design and
>
> manufacturing process;
>
> b. In failing to remove the Incident Aircraft from service following repeated
>
> "AUTO FAIL" pressurization warnings:
>
> c. In failing to maintain the Incident Aircraft in an airworthy and safe operating
>
> condition;
>
> d. In failing to detect or respond to visible indications of MED plug movement or
>
> structural instability prior to the Incident Flight;
>
> e. In failing to adequately train or equip flight and maintenance personnel to
>
> recognize and respond to catastrophic structural failures; and
>
> f. In failing to render timely and reasonable assistance to Plaintiffs following the
>
> MED plug separation and explosive decompression.

80. Defendant Alaska's acts or omissions, as set forth above, were a substantial factor and proximate cause of the physical injuries and psychological trauma sustained by Plaintiffs during and after the Incident Flight.

81. As a direct and proximate result of Defendant Alaska's breach of its duty of a common carrier, Plaintiffs have incurred, and will continue to incur, economic damages, including medical expenses and related out-of-pocket losses in amounts to be proven at trial.

82. As a further direct and proximate result of Defendant Alaska's breach of its duty of a common carrier, Plaintiffs have suffered and continue to suffer substantial non-economic damages, including pain, suffering, emotional distress, and loss of enjoyment of life.

83. The total of Plaintiffs' economic and non-economic damages exceeds $75,000, exclusive

of interest and costs, and will be established by competent evidence at trial.

**FOURTH CLAIM FOR RELIEF**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
(*Against Defendant The Boeing Company*)

84.  Plaintiffs re-allege and incorporate by reference each of the allegations set forth above as though fully restated herein.

85.  At all times material, Defendant Boeing was engaged in the design, manufacture, and sale of commercial aircraft, including the Incident Aircraft. Pursuant to ORS 72.3140(1), every sale of goods by a merchant includes an implied warranty of merchantability, warranting that the goods (a) pass without objection in the trade, (b) are fit for the ordinary purposes for which such goods are used, (c) conform to the promises or affirmations of fact made on any container or label, and (d) are of fair, average quality within the description. By designing, manufacturing, and selling the Incident Aircraft, Defendant Boeing impliedly warranted that the aircraft was airworthy, of merchantable quality, free from defects in design and manufacture, and fit and safe for its intended purpose—namely, the commercial air transport of fare-paying passengers, including Plaintiffs.

86.  Defendant Boeing breached the implied warranty of merchantability because the Incident Aircraft was defective, unairworthy, and unsafe for its intended purpose at the time it left Boeing's possession and control and was delivered to Defendant Alaska. Upon information and belief, the Incident Aircraft remained in substantially the same condition at the time of the Incident Flight as when Boeing delivered it to Alaska. The aircraft's structural defects—including the improperly installed and unsecured MED plug— rendered it unfit for its ordinary and intended use, not of merchantable quality, and nonconforming to Boeing's affirmations of airworthiness.

87.    As fare-paying passengers aboard the Incident Flight, Plaintiffs were intended third-party beneficiaries of Defendant Boeing's implied warranties of merchantability and fitness for a particular purpose, within the meaning of ORS 72.3180.

88.    Defendant Boeing's breach of the implied warranty of merchantability was a substantial factor—and a proximate cause—of the physical injuries and psychological trauma suffered by Plaintiffs during the Incident Flight.

89.    As a direct and proximate result of Defendant Boeing's breach of the implied warranty of merchantability, Plaintiffs have incurred, and will continue to incur, economic damages, including medical expenses and other related out-of-pocket costs, in amounts to be proven at trial.

90.    As a further direct result of Defendant Boeing's breach of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer substantial non-economic damages, including pain, suffering, emotional distress, and loss of enjoyment of life.

91.    The total of Plaintiffs' economic and non-economic damages exceeds $75,000, exclusive of interest and costs, and will be established by competent evidence at trial.

92.     As intended third-party beneficiaries, Plaintiffs are entitled to recover all damages proximately caused by Defendant Boeing's breach of warranty.

## VI. DEMAND FOR A JURY

93.    Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## VII. PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully pray for judgment against all Defendants, jointly and severally where permitted by law, and request that the Court award the following relief:

1. Economic damages in an amount to be proven at trial, including but not limited to past and future medical expenses, psychological treatment costs, and related out-of-pocket losses;

2. Non-economic damages in an amount to be proven at trial, including compensation for pain, suffering, emotional distress, and loss of enjoyment of life;

3. Punitive damages against Defendants Boeing Company, Spirit, and Quik Tek in an amount sufficient to punish and deter similar misconduct, pursuant to ORS 31.730 and applicable law;

4. Attorney fees and costs incurred in this action, as allowed by law; and

5. Such other and further relief as the Court deems just and proper.

**AMOUNT-IN-CONTROVERSY STATEMENT**

The total amount of damages sought by Plaintiffs—including economic, non-economic, and punitive damages—exceeds $75,000, exclusive of interest and costs, thereby satisfying the jurisdictional requirement of 28 U.S.C. § 1332(a).

DATED: October 27, 2025.

Respectfully submitted,

*/s/ Nathan G. Steele*
Nathan G. Steele, OSB No. 004386
Attorney for Plaintiffs
The Steele Law Firm
125 NW Greeley Avenue
Bend, Oregon 97703
Telephone: (541) 647-1812
Email: ngs@steelefirm.com