Alletta S. Brenner, OSB No. 142844
ABrenner@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Facsimile: +1.503.727.2222

Mack H. Shultz (*pro hac vice* forthcoming)
MShultz@perkinscoie.com
Christopher M. Ledford (*pro hac vice* forthcoming)
CLedford@perkinscoie.com
Pj M. Novack (*pro hac vice* forthcoming)
PNovack@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000
*Attorneys for Defendant The Boeing Company*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CYNTHIA F. TISHER, individually, and J. L. T., a minor, by and through his proposed guardian ad litem, Cynthia F. Tisher,<br><br>Plaintiffs,<br><br>v.<br><br>THE BOEING COMPANY, a foreign business corporation, SPIRIT AEROSYSTEMS, INC., a foreign business corporation, QUIK TEK MACHINING, LLC, a foreign limited liability company, and ALASKA AIRLINES, INC., a foreign business corporation,<br><br>Defendants. | Case No. 3:25-cv-1984<br><br>**DEFENDANT THE BOEING COMPANY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

LR 7-1 CERTIFICATION ................................................................................................. 1

MOTION ........................................................................................................................... 1

MEMORANDUM OF LAW ............................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 2

ARGUMENT .................................................................................................................... 5

A.    General jurisdiction does not exist here—Boeing is neither incorporated in nor has its principal place of business in Oregon. .......................................... 5

B.    Plaintiffs cannot establish specific personal jurisdiction over Boeing in Oregon. ................................................................................................................. 6

    1.    Plaintiffs' claims against Boeing rest on allegations of Boeing's conduct that was neither expressly aimed at Oregon nor occurred in Oregon. ................... 7

    2.    Plaintiffs do not allege any facts supporting that their claims "arise out of" or "relate to" Boeing's Oregon contacts. ............................................. 9

        i.    Plaintiffs cannot show their claims "arise out of" Boeing's Oregon contacts. ............................................................................ 9

        ii.    Plaintiffs also cannot show their claims "relate to" Boeing's Oregon contacts. ............................................................................ 11

    3.    Exercising personal jurisdiction over Boeing in this case would not be reasonable. ............................................................................................. 14

CONCLUSION ............................................................................................................... 17

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

# TABLE OF AUTHORITIES

**CASES**

*Abraham v. Kwauk*,
   2025 WL 1221027 (D. Or. Apr. 28, 2025) ........................................................................8, 17

*Anderson v. The Boeing Co.*,
   No. 25-2-00061-3KNT (King Cnty. Wash. Super. Ct.) ...........................................................15

*Bartlett v. The Boeing Co.*,
   No. 25-2-39609-6 SEA (King Cnty. Wash. Super. Ct.) ..........................................................16

*Berry v. The Boeing Co.*,
   No. 2:24-cv-00134 (W.D. Wash.) ............................................................................................15

*BNSF Ry. Co. v. Tyrrell*,
   581 U.S. 402 (2017)....................................................................................................................6

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ...................................................................................................5

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
   582 U.S. 255 (2017)....................................................................................................................9

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)....................................................................................................................7

*Capsugel Belgium NV v. Bright Pharma Caps, Inc.*,
   2015 WL 7185463 (D. Or. Nov. 13, 2015)................................................................................5

*Choe v. The Boeing Co.*,
   No. 25-2-35321-4 SEA (King Cnty. Wash. Super. Ct.) ..........................................................16

*Core-Vent Corp. v. Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993) ...................................................................................................17

*Cox v. HP Inc.*,
   492 P.3d 1245 (2021)..........................................................................................................12, 13

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)....................................................................................................................6

*Davis v. Cranfield Aerospace Sols., Ltd.*,
   71 F.4th 1154 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 82 (2024)...........................................7

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

*Esgate v. Home Depot U.S.A., Inc.*,
  2025 WL 1207217 (D. Or. Apr. 24, 2025) .............................................................15

*Fatnani v. JPMorgan Chase Bank, N.A.*,
  743 F. Supp. 3d 1253 (D. Or. 2024) ...............................................................7, 8, 9

*Ferguson v. Smith*,
  2018 WL 3733665 (D. Or. July 18, 2018) .............................................................2

*Fisher v. The Boeing Co.*,
  No. 25-2-22022-2 SEA (King Cnty. Wash. Super. Ct.) ........................................15

*Ford Motor Co. v. Mont. Eighth Jud. Dist.*,
  592 U.S. 351 (2021)......................................................................................... passim

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
  905 F.3d 597 (9th Cir. 2018) ........................................................................7, 17

*Griffin v. The Boeing Co.*,
  No. 26-2-01210-5 SEA (King Cnty. Wash. Super. Ct.) ........................................16

*Hughes v. The Boeing Co.*,
  No. 25-2-22023-1 SEA (King Cnty. Wash. Super. Ct.) ........................................15

*Kambarov v. Quality Counts, Inc.*,
  2025 WL 354389 (D. Or. Jan. 31, 2025) ............................................................13

*Khor v. The Boeing Co.*,
  No. 26-2-00710-1 SEA (King Cnty. Wash. Super. Ct.) ........................................16

*LNS Enterprises LLC v. Continental Motors, Inc.*,
  22 F.4th 852 (2022).............................................................................................14

*Maller v. The Boeing Co.*,
  No. 25-2-22024-9 SEA (King Cnty. Wash. Super. Ct.) ........................................15

*Marin v. The Boeing Co.*,
  No. 25-2-35294-3 SEA (King Cnty. Wash. Super. Ct..........................................16

*McCoy v. The Boeing Co.*,
  No. 25-2-39408-5 SEA (King Cnty. Wash. Super. Ct.) ........................................16

*Moise v. Boeing Co.*,
  2024 WL 4405190 (C.D. Cal. July 31, 2024).............................................6, 7, 15

*Olivas v. The Boeing Co.*,
  No. 25-2-29762-4 SEA (King Cnty. Wash. Super. Ct.) ........................................15

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

*Paccar Int'l, Inc. v. Comm. Bank of Kuwait, S.A.K.*,
  757 F.2d 1058 (9th Cir. 1985) ......................................................................15

*Perkins v. Benguet Consolidated Mining Co.*,
  342 U.S. 437 (1952)......................................................................................6

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ...............................................................2, 5, 7

*State Farm Fire & Cas. Co. v. Alumicraft LLC*,
  2025 WL 1726260 (D. Or. June 20, 2025) ..................................................12

*Talley v. The Boeing Co.*,
  No. 24-2-00985-0 SEA (King Cnty. Wash. Super. Ct) ................................15

*Ticketmaster-N.Y., Inc. v. Alioto*,
  26 F.3d 201 (1st Cir. 1994)..........................................................................16

*Tran v. The Boeing Co.*,
  No. 24-2-05657-2 SEA (King Cnty. Wash. Super. Ct.), *refiled as* No. 2:24-cv-
  00791 (W.D. Wash.) ...............................................................................15, 16

*Vasconcellos v. The Boeing Co.*,
  No. 25-2-22025-7 SEA (King Cnty. Wash. Super. Ct.) ..............................15

*Walden v. Fiore*,
  571 U.S. 277 (2014).......................................................................................2

*World-Wide Volkswagen Corp. v. Woodson*,
  444 US 286 (1980).......................................................................................13

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*
  724 F. Supp. 3d 945 ...............................................................................16, 17

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) (en banc) (per curiam)..................................8

*Yamashita v. LG Chem, Ltd.*,
  62 F. 4th 496 (9th Cir. 2023) ............................................................... passim

**OTHER AUTHORITIES**

*Alaska Air Group Fact Sheet*, Alaska Air, https://news.alaskaair.com/alaska-air-
  group-fact-sheet/ (last visited Jan 9, 2026) ................................................13

Fed. R. Civ. P. 12(b)(2).......................................................................................18

iv-   TABLE OF AUTHORITIES

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

## LR 7-1 CERTIFICATION

In compliance with LR 7-1, counsel for The Boeing Company ("Boeing") certifies that the parties conferred in good faith by telephone and were unable to resolve the disputes at issue in this motion.

## MOTION

Under Federal Rule of Civil Procedure 12(b)(2), Boeing moves to dismiss Plaintiffs' claims on the grounds that the Court lacks personal jurisdiction over Boeing for this case.

## MEMORANDUM OF LAW

Plaintiffs were passengers on a Boeing 737-9 airplane operated as Alaska Airlines Flight 1282 on January 5, 2024, when a part of the fuselage known as a Mid-Exit Door ("MED") plug detached shortly after takeoff from Portland International Airport. Plaintiffs bring claims against Boeing for alleged defects in the subject airplane and MED plug. But those claims are based solely on Boeing's conduct in other jurisdictions, primarily *Washington*, where Plaintiffs admit Boeing assembled the airplane and inspected the MED plug, and where fourteen other cases (brought on behalf of 105 claimants) arising from the same incident are pending.

Personal jurisdiction is either general or specific. Neither exists over Boeing here. Plaintiffs concede that Boeing is not incorporated in or based out of Oregon, and there are no facts supporting that this is an "exceptional" case where the exercise of general jurisdiction over Boeing in Oregon is justified. Instead, Plaintiffs argue that the Court has specific jurisdiction over Boeing, emphasizing that the MED plug detached over Oregon airspace. But Plaintiffs' emphasis on the location where the incident occurred is misplaced. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

forum in a meaningful way.'" *Ferguson v. Smith*, 2018 WL 3733665, at *3 (D. Or. July 18, 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)). That the airplane happened to be in Oregon when the MED plug detached was entirely fortuitous.

To establish specific jurisdiction over Boeing, Plaintiffs must show that Boeing purposefully directed its conduct at or availed itself of the privilege of conducting business in Oregon, that their claims arise out of or relate to that conduct, and that the exercise of jurisdiction comports with fair play and substantial justice. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004). Plaintiffs cannot meet that standard. Boeing's business operations in Oregon have nothing to do with Plaintiffs' product liability claims, which arise from activities occurring and directed elsewhere. Nor can Plaintiffs create an Oregon connection by alleging that Boeing has systematically cultivated a market for 737 MAX-9 airplanes in Oregon. Alaska Airlines is an Alaska corporation based in Washington, and Boeing does not market its commercial airplanes to *any* Oregon-based airline customers—indeed, there are none. Exercising personal jurisdiction over Boeing in Oregon based on Alaska Airlines' unilateral decision to fly into the State would be unreasonable, especially considering the related litigation already pending in Washington. Plaintiffs' claims against Boeing should be dismissed.

## FACTUAL BACKGROUND

On January 5, 2024, a Boeing 737 MAX-9 airplane operating as Alaska Airlines Flight 1282 departed from Portland International Airport. *See* ECF 17, Am. Compl. ¶ 29. Shortly after takeoff, the left MED plug detached from the aircraft, resulting in a rapid decompression. *Id.* Flight 1282 made an emergency descent and safely returned to Portland International Airport. *See id.* ¶ 29–31. Plaintiffs were passengers aboard Flight 1282. *Id.* ¶ 29. They are both residents of Oregon and allege that they experienced injuries and damages during and after this event. *Id.* ¶ 2-

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

3.

Plaintiffs allege claims against Boeing for strict product liability and breach of the implied warranty of merchantability for the allegedly defective MED plug. *Id.* ¶¶ 34-37, 90-102. They also allege claims against Boeing for negligence and negligence *per se* based on the removal and reinstallation of the MED plug, Boeing's training and supervision of the employees involved in that work, and its oversight of Spirit Aerosystems, Inc. ("Spirit"), the Delaware corporation based in Kansas that designed, manufactured, and then installed the MED plug in the fuselage. *Id.* ¶¶ 44-45, 52-54. Plaintiffs allege similar claims for negligence and negligence *per se* against Spirit, and Quik Tek Machining LLC ("Quik Tek"), a Kansas corporation that performed work on the subject fuselage. *Id.* ¶¶ 45-50, 63-64, 73-81. Finally, Plaintiffs allege a claim for breach of the duty of a common carrier against Alaska Airlines Inc. ("Alaska"), an Alaska corporation based in Washington that was the operator of Flight 1282. *Id*. ¶¶ 82-89.

Plaintiffs correctly allege that Boeing is a Delaware corporation with its corporate headquarters in Arlington, Virginia. *Id.* ¶ 9(b). Boeing "manufactures commercial aircraft in the United States, including Boeing 737 MAX series aircraft assembled at its Renton, Washington facility." *Id.* ¶ 4. Renton is where Boeing took delivery of the subject airplane fuselage (including the MED plug) from its supplier Spirit. *Id.* ¶ 4, 23–25; *see also* Declaration of Manuel Tiggs ("Tiggs Decl.") ¶¶ 3–8, 20, 28–29 (describing how Spirit designed the MED plug, manufactured it in Malaysia, installed it on the subject airplane's fuselage in Kansas, and then shipped the fuselage to Boeing's factory in Renton). Plaintiffs allege that their claims against Boeing "arise out of, or relate to, Boeing's design, manufacture, assembly, inspection, certification, and quality-assurance of the MED-plug system incorporated into the Incident Aircraft." Am. Compl. ¶¶ 4, 11. And Renton, Washington is where these events at the heart of Plaintiffs' claims against Boeing—

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

the removal, reinstallation, and inspection of the MED plug—occurred. Am. Compl. ¶ 23.

Plaintiffs do not allege that any work related to the MED plug occurred in Oregon. Instead, they allege Boeing "has maintained a continuous and deliberate commercial presence in Oregon for decades," including by registering to do business in Oregon, maintaining a registered agent in Oregon, and operating a machining center in Gresham where "precision components used in Defendant Boeing's commercial-aircraft product lines" are manufactured. *Id.* ¶ 11. Plaintiffs allege that these "ongoing engineering, manufacturing, and aviation-related operations in Oregon . . . materially support its nationwide aircraft programs" and are a source of "substantial revenue and ongoing commercial benefit" to Boeing. *Id.* Boeing does have a machining center in Gresham where it builds subcomponents for several airplanes, including for the 737 MAX. *See* Tiggs Decl. ¶¶ 11, 13–20. However, these subcomponents make up only a tiny fraction of the more than 2 million parts required to build an entire airplane. *Id.* More importantly, none of them have anything to do with the part at issue in this case—the MED plug. *Id.*

Plaintiffs also suggest that Boeing's Oregon business activities create a "substantial connection" to this forum, but they do not allege any facts connecting those activities to their claims. *See* Am. Compl. ¶ 11 (alleging basis for specific jurisdiction over Boeing in Oregon). Rather, Plaintiffs allege that their claims "arise out of or relate to" Boeing's Oregon activities simply because those activities relate to "aviation" and include "integrating Oregon-produced parts into its aircraft programs, and supplying aircraft"—including the subject airplane—"that predictably and routinely operate in Oregon airspace." *Id.* ¶¶ 11, 14.

Plaintiffs do not allege that Boeing cultivates a market for its airplanes in Oregon by marketing and selling its airplanes to *Oregon* customers. *See id.* ¶ 11. In fact, Boeing does not sell commercial airplanes like the 737 MAX-9 to *any* Oregon airline customers. Declaration of Aaron

Mangone ("Mangone Decl.") ¶¶ 2-5. There is no "market" for Boeing's commercial airplanes in Oregon because there are no commercial airlines based in Oregon. *See id.* (noting that none of Boeing's customers—commercial airline companies that would purchase a large commercial jet— are based in Oregon). And while airlines such as Alaska do operate Boeing airplanes in Oregon, Boeing does not have any Oregon facilities that provide post-sale maintenance or repair services to airline customers. Tiggs Decl. ¶¶ 21–24, 27–34.

After the subject airplane was assembled and inspected, Boeing delivered it to Alaska Airlines in Washington, which placed it into commercial service on or about November 11, 2023. Am. Compl. ¶ 27; Tiggs Decl. ¶ 30. After that, Boeing received no communications from Alaska about the subject airplane nor had any further involvement with it until after the MED plug detached on January 5, 2024. *See* Tiggs Decl. ¶¶ 31–34.

## ARGUMENT

Plaintiffs have the burden of establishing that the exercise of personal jurisdiction over Boeing in this case would not offend due process. *Capsugel Belgium NV v. Bright Pharma Caps, Inc.*, 2015 WL 7185463, at *2 (D. Or. Nov. 13, 2015); *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). And although "uncontroverted allegations in the complaint must be taken as true," a plaintiff may not rest solely on the "bare allegations of its complaint." *Schwarzenegger*, 374 F.3d at 800 (cleaned up). For the reasons below, Plaintiffs cannot meet their burden to establish general or specific jurisdiction over Boeing in this case.

### A. General jurisdiction does not exist here—Boeing is neither incorporated in nor has its principal place of business in Oregon.

Plaintiffs allege that Boeing "has maintained a continuous and deliberate commercial presence in Oregon for decades," Am. Compl. ¶ 11, but that is not enough to confer general

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

jurisdiction over Boeing in Oregon. General jurisdiction arises "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear*, 564 U.S. at 919). The paradigm all-purpose forums for general jurisdiction over a corporation are "the place of incorporation and principal place of business." *Id.* at 137, 139 n.19 (quoting *Goodyear*, 564 U.S. at 924). Plaintiffs admit Boeing that is incorporated in Delaware and that its principal place of business is in Arlington, Virginia. Am. Compl. ¶ 4. Boeing is thus not "essentially at home" or subject to general jurisdiction in Oregon. *Daimler*, 571 U.S. at 139 n.20; *see also BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) (extensive in-state activities do not make a foreign corporation "at home" in a forum).

Nor is this an "exceptional case" justifying the exercise of general jurisdiction over Boeing in Oregon. The Supreme Court has identified only one such "exceptional case," in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), which involved a Philippine corporation that temporarily moved its office, president, and company files to Ohio during World War II. *Daimler*, 571 U.S. at 129–130. Arguably this exception is limited "to the exact facts of *Perkins*," which are nothing like this case. *See Tyrrell*, 581 U.S. at 418–19 (Sotomayor, J., concurring in part and dissenting in part)*; cf. Moise v. Boeing Co.*, 2024 WL 4405190, at *3 (C.D. Cal. July 31, 2024) (rejecting argument that Boeing is subject to general jurisdiction in California based on similar business operations in case arising from the same incident). There is no general jurisdiction over Boeing in Oregon.

### B.    Plaintiffs cannot establish specific personal jurisdiction over Boeing in Oregon.

The "essential foundation" of specific jurisdiction is a "strong relationship among the defendant, the forum, and the litigation" arising out of contact that the defendant itself creates with

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

the forum. *Fatnani v. JPMorgan Chase Bank, N.A.*, 743 F. Supp. 3d 1253, 1267 (D. Or. 2024) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist.,* 592 U.S. 351 (2021)). The Ninth Circuit uses a three-part test to determine if that foundation exists, asking whether: (1) the defendant purposefully directed its activities at the forum or purposefully availed itself of the privilege of conducting activities in the forum; (2) the claim arises out of or relates to those forum-related activities; and (3) the exercise of jurisdiction would comport with fair play and substantial justice, *i.e.*, is reasonable. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018). Plaintiffs have the burden on the first two elements. *Schwarzenegger*, 374 F.3d at 802. Only when both of those elements are met does the burden shift to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 802 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### 1. Plaintiffs' claims against Boeing rest on allegations of Boeing's conduct that was neither expressly aimed at Oregon nor occurred in Oregon.[1]

Courts in the Ninth Circuit first look to whether the defendant has engaged in "purposeful direction," "purposeful availment," or some combination of the two. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 82 (2024). "For tortious conduct that takes place within the forum state, the purposeful availment test is generally appropriate, while the purposeful direction analysis is generally appropriate for tortious conduct that takes place outside the forum state but has an effect within the forum state." *Fatnani*, 743 F.

---

[1] Same as it has in other cases, Boeing does not dispute that it engages in substantial business activity in Plaintiffs' chosen forum. *See Moise*, 2024 WL 4405190, at *4. In *Moise*, the district court concluded that "Boeing does not dispute the first prong of this [jurisdictional] analysis" on that basis alone, applying the purposeful availment test. Boeing does not concede, however, that substantial business activity unrelated to an allegedly tortious act outside the forum constitutes *purposeful direction*, which is the test commonly applied by courts in this district for claims arising in tort. But either way, just as in *Moise*, Plaintiffs cannot establish personal jurisdiction here because there is no nexus between that activity and their claims.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Supp. 3d at 1268; *see also Abraham v. Kwauk*, 2025 WL 1221027, at *3 (D. Or. Apr. 28, 2025) (discussing same). Purposeful direction requires "(1) an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (per curiam) (cleaned up). Purposeful availment, on the other hand, is based more broadly on the defendant's "entire course of dealing with the forum state." *Fatnani*, 743 F. Supp. 3d 1269. "Business activity constitutes purposeful availment when that activity reaches out and creates continuing relationships and obligations in the forum state." *Id.* (cleaned up and citations omitted).

Plaintiffs cannot show purposeful direction here because none of the allegedly tortious acts or omissions on which their claims against Boeing are based were expressly aimed at Oregon. *See* Am. Compl. ¶¶ 4, 11, 14, 22-24, 27-29 (alleging that Boeing manufactures commercial aircraft, including the 737 MAX in Renton, Washington, took delivery of the subject fuselage at its facility in Renton, removed, reinstalled and inspected the MED plug at that facility, and delivered the airplane to Alaska in Washington). If anywhere, those actions were aimed at Washington, where Boeing marketed, sold, and delivered the airplane. *See id.*; *see also* Tiggs Decl. ¶ 30; Mangone Decl. ¶¶ 2, 5.

Plaintiffs may argue that the Court should apply the purposeful availment test instead. But even if Boeing's Oregon activities amount to purposeful availment, that will not be enough to establish specific jurisdiction in this case. Specific jurisdiction requires a strong relationship among "the defendant, the forum, *and the litigation*." *Fatnani*, 743 F.Supp.3d at 1267 (citing *Ford*, 592 U.S. at 351) (emphasis added). For the reasons explained below, that "essential foundation" does not exist here. *Id.*

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

2.    **Plaintiffs do not allege any facts supporting that their claims "arise out of" or "relate to" Boeing's Oregon contacts.**

Plaintiffs must next show that "the underlying controversy" arises out of or relates to Boeing's Oregon contacts. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). Absent "such [a] connection, specific jurisdiction is lacking regardless of the extent of [Boeing's] unconnected activities in the State." *Id.* at 264. Here, personal jurisdiction does not exist for precisely that reason—none of Boeing's Oregon contacts have any connection at all to Plaintiffs' claims, let alone a causal connection.

i.    **Plaintiffs cannot show their claims "arise out of" Boeing's Oregon contacts.**

A claim "arises out of" a defendant's contacts with the forum only if the plaintiff shows "but-for" causation, "in which a direct nexus exists between a defendant's contacts with the forum state and the cause of action." *Yamashita v. LG Chem, Ltd.*, 62 F. 4th 496, 504 (9th Cir. 2023) (cleaned up). In *Yamashita*, the Ninth Circuit held that even though the Hawaii resident plaintiff showed the defendants purposefully availed themselves of the privilege of doing business in the forum by using the Port of Honolulu to ship their products generally and by marketing residential solar batteries in Hawaii, those contacts were not the "but-for" cause of his alleged injury arising from an electronic cigarette battery. *Id.* at 501–02, 506. Noting that the plaintiff did not allege that the defendants shipped the injury-causing battery to Hawaii (but merely provided batteries for products they expected to be sold in Hawaii) the court held that dismissal was proper because there was "little reason to believe" that the defendants' use of the port generally or marketing of solar batteries specifically had "anything to do with Hawaii residents' acquisition of [electronic cigarette batteries]." *Id.* at 501, 506–07. Thus, the court upheld the dismissal of the plaintiff's claims for lack of personal jurisdiction. *Id.*

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone:  +1.503.727.2000
Fax:  +1.503.727.2222

Just as in *Yamashita*, Plaintiffs here cannot show "but-for" causation between their claimed injuries and Boeing's alleged *Oregon* activities. Rather, Plaintiffs' claims against Boeing are based entirely on acts and omissions that occurred elsewhere. For example, Plaintiffs allege that Boeing caused their injuries by placing the subject airplane "into the stream of commerce" with "defects in its design, manufacture, assembly, inspection, and quality control processes" that rendered it "unsafe for its intended and reasonably foreseeable use, and caused the MED plug assembly to fail." Am. Compl. ¶ 34; *see also id.* ¶ 37–40 (alleging conduct by Boeing that caused Plaintiffs' injuries).[2] But these allegedly tortious activities all occurred *outside* Oregon. Am. Compl. ¶¶ 23–25, Tiggs Decl. ¶¶ 3–4, 6-8.

Indeed, Plaintiffs concede that Renton, Washington is where Boeing received the fuselage on which the MED plug was originally installed by Spirit. Am. Compl. ¶¶ 23–25; *accord* Tiggs Decl. ¶¶ 4–5. And they also concede that Washington is where all the subsequent activity relating to the MED plug occurred, including its removal, reinstallation, and inspection. Am. Compl. ¶¶ 23–25; *accord* Tiggs Decl. ¶ 6. And finally, they concede that Washington is where Boeing delivered the finished airplane to Alaska. Am. Compl. ¶¶ 25–27; *accord* Tiggs Decl. ¶ 30. None of these activities has any connection to Oregon. Plaintiffs do not allege otherwise, nor could they.

Plaintiffs allege no facts showing that Boeing's Oregon-related activities were the "but-for" cause of Plaintiffs' alleged injuries. They have thus failed to meet the "arising out of" requirement to establish specific personal jurisdiction. *See Yamashita*, 62 F4th at 504 ("We have

---

[2] Plaintiffs' other claims against Boeing rely on the same operative facts. *See id.* ¶¶ 45–48 (alleging Boeing's negligent assembly and inspection of the subject airplane, including "[f]ailing to properly assemble, install, and secure the MED plug and associated components during production" and "[f]ailing to conduct adequate inspections, testing, and quality assurance procedures."), ¶¶ 53–59 (similar allegations supporting negligence per se claim), and ¶¶ 96–99 (similar allegations supporting breach of warranty claim).

10- THE BOEING COMPANY'S MOTION TO DISMISS

long understood that for an injury to arise out of a defendant's forum contacts required 'but for' causation, in which a direct nexus exists between a defendant's contacts with the forum state and the cause of action.") (cleaned up).

### ii. Plaintiffs also cannot show their claims "relate to" Boeing's Oregon contacts.

Plaintiffs cannot overcome the lack of causal connection by showing that their claims "relate to" Boeing's Oregon activities. The Ninth Circuit has provided three guideposts for analyzing whether an alleged injury is "related to" the defendant's forum contacts. *Yamashita*, 62 F.4th at 505–06 (discussing *Ford*, 592 U.S. at 361). First, "relatedness proxies for causation, ensuring jurisdiction over a class of cases for which causation seems likely but is not always easy to prove." *Id.* at 506. Second, "a plaintiff's injury relates to a defendant's forum contacts if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Id.* And finally, "'relate to' does not mean anything goes"; rather, "relatedness requires a *close connection* between contacts and injury." *Id.* (emphasis added). Each of these guideposts points away from specific jurisdiction in this case.

First, Boeing's Oregon-based activities do not "relate to" Plaintiffs' claims against Boeing because Plaintiffs cannot show *any* relationship between Boeing's Oregon-based activities and their alleged injuries, let alone a causal relationship. *Id.* at 506. Nor can they show that "causation seems likely." *Id.* at 505. Indeed, none of Boeing's 737 MAX-9 manufacturing and assembly activities related to the MED plug are in Oregon. Tiggs Decl. ¶ 6. Instead, those activities occur in Renton, Washington. Am. Compl. ¶¶ 4, 23–25.

Second, Plaintiffs cannot show that Boeing "should have foreseen the risk that its [forum] contacts might cause injuries like that of the plaintiff." *Yamashita*, 62 F.4th at 506. There is no reason Boeing should have foreseen injuries similar to those Plaintiffs allege based on unrelated

11-   THE BOEING COMPANY'S MOTION TO DISMISS

Oregon activities. *See Yamashita*, 62 F.4th at 506 (rejecting argument that shipping other products through port "related to" plaintiff's injury by a specific type of battery, calling the argument "implausible"). Boeing assembled an airplane in Washington using a MED plug manufactured in Malaysia and installed in the fuselage in Kansas, and then sold and delivered that airplane in Washington to Alaska Airlines, a Washington-based customer. Tiggs Decl. ¶¶ 3–8, 30. These are not facts that would cause Boeing reasonably to anticipate that it would be sued in Oregon for alleged negligence in removing, reinstalling, and inspecting the MED plug in Washington. Nor would Boeing reasonably anticipate that manufacturing entirely unrelated parts at its Gresham machining center would give rise to product liability claims in Oregon for alleged defects in a MED plug manufactured in Malaysia, installed in Kansas, and then removed, reinstalled and inspected in Washington. *See Cox v. HP Inc.*, 492 P.3d 1245, 1258–60 (2021) (rejecting personal jurisdiction because defendant's Oregon activities were not sufficiently related to the events giving rise to litigation to give defendant "clear notice" that it would be subject to such litigation in Oregon).

Nor can Plaintiffs establish jurisdiction on the basis that Boeing supplies airplanes "that predictably and routinely operate in Oregon airspace." *See* Am. Compl. ¶ 11. "It is clearly established that a consumer's unilateral act of bringing the defendant's product into the forum State is not a constitutional basis for personal jurisdiction over the defendant." *State Farm Fire & Cas. Co. v. Alumicraft LLC*, 2025 WL 1726260, at *3 (D. Or. June 20, 2025) (internal citations and quotation marks omitted). And selling products to customers who themselves participate in a global market does not make a defendant subject to personal jurisdiction everywhere those customers might send or use products. *See Yamashita*, 62 F.4th at 501–06 (rejecting personal jurisdiction based on "relatedness" argument where plaintiff argued that defendants provided

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

batteries for products they expected to be sold in Hawaii); *see also, e.g.*, *Cox*, 492 P.3d 1262 (rejecting personal jurisdiction based on argument that defendant marketed its services globally and that this global market included Oregon). The fact that customers like Alaska operate in Oregon (among many other places) does not make it foreseeable that Plaintiffs' *claims* in this case would arise in Oregon.[3] *See World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State" but that the defendant should "reasonably anticipate being haled into court there."). More importantly, even if Boeing knew that Alaska was likely to fly routes in and out of Oregon, that does not make Boeing's manufacture of the airplane sold to Alaska *related to* Oregon. *Cf. Kambarov v. Quality Counts, Inc.*, 2025 WL 354389, at *3 (D. Or. Jan. 31, 2025) (rejecting personal jurisdiction where the "[d]efendant's connections to Oregon are mostly facilitated through third parties" and the defendant's clients in Oregon were companies based in other states).

Finally, the Supreme Court cautioned—and *Yamashita* re-emphasized—that "the phrase 'relate to' incorporates real limits." *Ford*, 592 U.S. at 362. There must be a "close connection" between a plaintiff's injuries and the forum contacts. *Yamashita*, 62 F.4th at 506. Plaintiffs allege that their claims "arise out of or relate to" Boeing's Oregon activities simply because those activities relate generally to "aviation" and because Boeing integrates "Oregon-produced parts into its aircraft programs." Am. Compl. ¶ 11. But Plaintiffs do not—and cannot—allege that Boeing's manufacturing of a small number of other, unrelated 737-9 MAX subcomponents in Oregon has anything to do with the alleged defects in the MED plug on the subject airplane or Boeing's alleged

---

[3] Alaska Air Group—the parent company of Alaska Airlines—currently serves more 140 destinations and operates more than 1,500 flights daily. *See Alaska Air Group Fact Sheet*, Alaska Air, https://news.alaskaair.com/alaska-air-group-fact-sheet/ (last visited Jan 9, 2026).

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

negligence in the assembly and inspection of that airplane. *See* Tiggs Decl. ¶¶ 15–20. And Plaintiffs certainly cannot show that there is a "close connection" between those Oregon manufacturing activities and their claims. *See*, *e.g.*, *LNS Enterprises LLC v. Continental Motors, Inc.*, 22 F.4th 852, 863–64 (2022) (finding no personal jurisdiction where plaintiff alleged that defendant had repair shops in forum but did not allege any of these worked on subject aircraft or even type of aircraft engine at issue).

Plaintiffs cite *Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021) in their Amended Complaint in support of the Court's jurisdiction over Boeing, but the facts here are nothing like those that gave rise to personal jurisdiction in *Ford*. Plaintiffs have not alleged that Boeing has engaged in a pervasive course of conduct in Oregon with the objective of "systematically serv[ing]" a market for its commercial aircraft among Oregon customers. *See Ford*, 592 U.S. at 364–67; *see* Am. Compl. ¶ 4, 11, 14. Indeed, Plaintiffs have not alleged that Boeing serves or cultivates a market *at all* for commercial passenger airplanes in Oregon. And with good reason. Boeing's customers are airlines, not individual passengers. Mangone Decl. ¶ 2. And Oregon is not home to any airline that would purchase a large commercial jet like the 737 MAX. *See id.*

Put simply, Plaintiffs' alleged injuries do not "relate to" Boeing's activities in Oregon. Plaintiffs thus cannot establish that specific jurisdiction exists over Boeing in this case.

### 3.    Exercising personal jurisdiction over Boeing in this case would not be reasonable.

Because Plaintiffs cannot satisfy their burden as to the second element of the jurisdictional test, the Court need not even address the third element. *Moise*, 2024 WL 4405190, at \*5. But even if Plaintiffs could establish that their claims arise out of or relate to Boeing's contacts with Oregon,

14-   THE BOEING COMPANY'S MOTION TO DISMISS

the exercise of personal jurisdiction over Boeing would not be reasonable. In determining

reasonability, courts consider seven factors:

> (1) the extent of the [defendant's] purposeful interjection into the
> forum state; (2) the burden on the defendant of defending in the
> forum; (3) the extent of conflict with the sovereignty of the
> defendant's state; (4) the forum state's interest in adjudicating the
> dispute; (5) the most efficient judicial resolution of the [dispute]; (6)
> the importance of the forum to the plaintiff's interest in convenient
> and effective relief; and (7) the existence of an alternative forum.

*X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 943-44 (N.D. Cal. 2024)

(quoting *Paccar Int'l, Inc. v. Comm. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985));

*Esgate v. Home Depot U.S.A., Inc.*, 2025 WL 1207217, at *6-7 (D. Or. Apr. 24, 2025). Three of

these factors strongly undercut the reasonableness of exercising specific jurisdiction over Boeing

in this case. The incident involving Flight 1282 was highly publicized, and multiple cases have

been filed against Boeing (as well as the other defendants in this action), many of which were filed

in Washington.[4] Boeing has admitted that it is subject to specific personal jurisdiction in

---

[4] There are fourteen cases with 105 plaintiffs filed in Washington. *Berry v. The Boeing Co.,* No. 2:24-cv-00134 (W.D. Wash.), *voluntarily dismissed and refiled as Anderson v. The Boeing Co*., No. 25-2-00061-3KNT (King Cnty. Wash. Super. Ct.) (51 plaintiffs); *Tran v. The Boeing Co*., No. 24-2-05657-2 SEA (King Cnty. Wash. Super. Ct.), *refiled as* No. 2:24-cv-00791 (W.D. Wash.) (7 plaintiffs); *Talley v. The Boeing Co.,* No. 24-2-00985-0 SEA (King Cnty. Wash. Super. Ct) (27 plaintiffs); *Hughes v. The Boeing Co.*, No. 25-2-22023-1 SEA (King Cnty. Wash. Super. Ct.) (1 plaintiff); *Fisher v. The Boeing Co.*, No. 25-2-22022-2 SEA (King Cnty. Wash. Super. Ct.) (1 plaintiff); *Maller v. The Boeing Co.*, No. 25-2-22024-9 SEA (King Cnty. Wash. Super. Ct.) (1 plaintiff); *Vasconcellos v. The Boeing Co.*, No. 25-2-22025-7 SEA (King Cnty. Wash. Super. Ct.) (1 plaintiff); *Olivas v. The Boeing Co.*, No. 25-2-29762-4 SEA (King Cnty. Wash. Super. Ct.) (2 plaintiffs); *Marin v. The Boeing Co.*, No. 25-2-35294-3 SEA (King Cnty. Wash. Super. Ct. (2 plaintiffs); *Choe v. The Boeing Co.*, No. 25-2-35321-4 SEA (King Cnty. Wash. Super. Ct.) (2 plaintiffs); *McCoy v. The Boeing Co.*, No. 25-2-39408-5 SEA (King Cnty. Wash. Super. Ct.) (3 plaintiffs); *Bartlett v. The Boeing Co.*, No. 25-2-39609-6 SEA (King Cnty. Wash. Super. Ct.) (2 plaintiffs); *Khor v. The Boeing Co.*, No. 26-2-00710-1 SEA (King Cnty. Wash. Super. Ct.) (5 plaintiffs); *Griffin v. The Boeing Co.*, No. 26-2-01210-5 SEA (King Cnty. Wash. Super. Ct.) (1 plaintiff).

15-  THE BOEING COMPANY'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

Washington courts, as has Alaska and Boeing's supplier Spirit Aerosystems.[5] Thus, there is undoubtedly an alternative forum in Washington (factor seven). *X Corp.*, 724 F. Supp. at 945–46 (noting that the plaintiff bears the burden on this factor by proving the unavailability of an alternative forum). Washington courts would offer the "most efficient resolution of the [dispute]" (factor five) because most witnesses and evidence related to Plaintiffs' claims would be located there. *Id.* at 943. For similar reasons, the "burden on the defendant" in defending itself here (factor two) supports finding the exercise of specific jurisdiction over Boeing in Oregon unreasonable. *Cf. id.* at 943–45 (finding exercise of specific jurisdiction over foreign corporation unreasonable). The burden of forcing a defendant to appear in a different state from where the complained-of activities occurred (*i.e.*, the assembly of the subject aircraft) and the key witnesses are located is "entitled to substantial weight in calibrating the jurisdictional scales." *See Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) (dismissing case against a California defendant brought in Massachusetts). The burden of compelling Boeing to litigate in Oregon when all its allegedly tortious activity occurred in Washington and where the same issues are already being litigated, weighs in favor of dismissal.

Three of the other factors are neutral at best. For example, even if Boeing had "purposefully injected" itself in the Oregon forum (factor one), Plaintiffs have not identified any "close connection" between Boeing's activities in Oregon and Plaintiffs' alleged injuries, *see Yamashita*, 62 F.4th at 506, and therefore any "purposeful interjection" would be minimal and should not be given much weight. *See, e.g.*, *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (explaining that the degree of "purposeful interjection" is evaluated in the

---

[5] *See, e.g.*, the respective answers of Boeing (Dkt. 28) and Alaska Airlines (Dkt. 20) in *Tran v. The Boeing Co.*, No. 24-2-05657-2 SEA (King Cnty Wash Super Ct), ¶ 16 (admitting personal jurisdiction in King County, Washington Superior Court).

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: +1.503.727.2000
Fax: +1.503.727.2222

reasonableness analysis), *holding modified on other grounds by Yahoo!*, 433 F.3d at 1207. And while Oregon does have an interest in adjudicating a dispute involving the alleged injury of two of its residents (factor four), that interest is significantly outweighed by Washington's interest in adjudicating a dispute involving a product that was assembled and manufactured in Washington. Tiggs Decl. ¶¶ 6, 8 (factor three).

Only the sixth factor—Plaintiffs' interest in litigating in this forum—supports jurisdiction over Boeing and only marginally so. *See X Corp.*, 724 F. Supp. 3d 921,  (citing *Freestream Aircraft*, 905 F.3d at 609). Even if Plaintiffs have an interest in litigating in Oregon, it can hardly be said that their overall interest in this forum is strong, given that so much of the relevant conduct occurred outside the state. Moreover, the Ninth Circuit gives little weight to this factor. *Id.* The Court similarly should give Plaintiffs' interest in this forum little weight.

Exercising jurisdiction over Boeing in Washington, not Oregon, would best comport with "fair play and substantial justice." *Kwauk*, 2025 WL 1221027, at *3.

## CONCLUSION

Plaintiffs have failed to satisfy their burden of showing that Boeing is subject to personal jurisdiction in Oregon consistent with due process. Boeing is not subject to general jurisdiction in Oregon. And because Plaintiffs fail to show that their claims arise out of or relate to Boeing's contacts in Oregon, there is no specific jurisdiction either. Thus, pursuant to Rule 12(b)(2), Boeing respectfully asks the Court to dismiss Boeing from this case.

DATED:  January 9, 2026

**PERKINS COIE LLP**

By:/s/ *Alletta S. Brenner*
Alletta S. Brenner, OSB No. 142844
ABrenner@perkinscoie.com
Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone: +1.503.727.2000
Facsimile: +1.503.727.2222

Mack H. Shultz (*pro hac vice* forthcoming)
MShultz@perkinscoie.com
Christopher M. Ledford (*pro hac vice* forthcoming)
CLedford@perkinscoie.com
Pj M. Novack (*pro hac vice* forthcoming)
PNovack@perkinscoie.com
Perkins Coie LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

*Attorneys for Defendant The Boeing Company*