# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CYNTHIA F. TISHER**, individually, and **J.L. T.**, a minor, by and through his proposed guardian ad litem, Cynthia F. Tisher, | Case No. 3:25-cv-1984-SI |
| Plaintiffs, | **OPINION AND ORDER ON MOTIONS TO DISMISS OR TRANSFER** |
| v. | |
| **THE BOEING COMPANY**, a foreign business corporation; **SPIRIT AEROSYSTEMS, INC.**, a foreign business corporation; **QUIK TEK MACHINING, LLC**, a foreign business corporation; and **ALASKA AIRLINES, INC.**, a foreign business corporation, | |
| Defendants. | |

Nathan G. Steele, THE STEELE LAW FIRM PC, 125 NW Greeley Avenue, Bend, OR 97703. Of Attorneys for Plaintiffs.

Alletta S. Brenner, PERKINS COIE LLP, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209; and Michael Paisner and Pj Novack, PERKINS COIE LLP, 1301 Second Avenue, Suite 4200, Seattle, WA 98101. Of Attorneys for Defendant The Boeing Company.

Jeanne F. Loftis and Victoria K. Baker, BAKER STERCHI COWDEN & RICE LLC, 2100 Westlake Avenue, N., Suite 206, Seattle, Washington 98109; and Diane Westwood Wilson, FOX ROTHSCHILD LLP, 101 Park Avenue, 17th Floor, New York, New York 10178. Of Attorneys for Defendant Spirit AeroSystems, Inc.

PAGE 1 – OPINION AND ORDER

Evelyn E. Winters and Vanessa G. Aaron, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, 805 SW Broadway, Suite 2460, Portland, Oregon 97205. Of Attorneys for Defendant Quik Tek Machining, LLC.

Caryn Geraghty Jorgensen, John T. Fetters, and Brett T. MacIntyre, STOKES LAWRENCE PS, 1420 Fifth Avenue, Suite 3000, Seattle, WA 98101. Of Attorneys for Defendant Alaska Airlines, Inc.

**Michael H. Simon, District Judge.**

On January 5, 2024, Cynthia Tisher and her minor son J.L. T. boarded a Boeing 737-9 MAX at Portland International Airport in Portland, Oregon. The plane took off and, during its climb to cruising altitude, a port-side interior panel separated from the fuselage, causing an explosive decompression and a hole in the side of the plane. Air whipped through the cabin. J.L. T.'s seat—positioned next to the now-detached panel—pitched toward the opening. The rapid change in air pressure sucked J.L. T.'s shirt off his body. Ms. Tisher clutched onto J.L. T., terrified that he too would be pulled outside the airplane. Oxygen masks dropped from above, as insulation and paneling shed off the body of the plane. Other passengers helped Ms. Tisher and J.L. T. move away from their seats, as pilots safely returned the aircraft to the airport. This event appears to have been caused by a defective Mid-Exit-Door ("MED") plug.

In this lawsuit, Ms. Tisher and J.L. T. sue four defendants: the plane's manufacturer, The Boeing Company ("Boeing"); the operator of the flight, Alaska Airlines, Inc. ("Alaska"); and two companies that allegedly made the MED plug or related parts, Spirit AeroSystems, Inc. ("Spirit") and Quik Tek Machining, LLC ("Quik Tek"). Boeing, Spirit, and Quik Tek (collectively, the "Moving Defendants") have separately moved under Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss this lawsuit, arguing that the Court lacks personal jurisdiction over them. Quik Tek also moves under Rule 12(b)(6), arguing in the alternative that Plaintiffs fail to state a claim against Quik Tek. For the reasons explained below, the Court

PAGE 2 – OPINION AND ORDER

agrees that it lacks personal jurisdiction over the Moving Defendants. In lieu of dismissal, however, and for the reasons discussed below, the Court finds that transferring this case to an appropriate district is in the interest of justice. For the reasons also stated below, the Court denies Plaintiffs' request to sever their claims against Alaska, over which this Court has personal jurisdiction, so that the Court may keep Plaintiffs' claims against Alaska in this district. Accordingly, the Court transfers the entire case to the United States District Court for the Western District of Washington and declines to address Quik Tek's alternative motion under Rule 12(b)(6), which can be addressed by the transferee court.[1]

## STANDARDS

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When resolving such a motion on written materials, rather than after an evidentiary hearing, a court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id*. (cleaned up). Although a plaintiff may not rest solely on "the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Id*. (cleaned up). In addition, conflicts between the parties over statements in affidavits must be resolved in the plaintiff's favor. *Id.*

## BACKGROUND

On January 5, 2024, Plaintiffs were injured aboard Alaska Airlines Flight 1282 shortly after it took off from Portland International Airport when an MED plug separated from the plane

---

[1] Notwithstanding Defendants' requests for oral argument, the Court does not believe that oral argument would assist in resolving the pending motions. *See* LR 7-1(d)(1).

causing an "explosive decompression" next to their seats. *See* ECF 17 ("FAC") ¶¶ 1, 25, 29. The flight took off from Portland, Oregon. Three companies touched the MED plug before the airplane was sent to Alaska: Quik Tek, Spirit, and Boeing. *See id.* ¶¶ 21-25.

In 2023, Quik Tek manufactured one or more edge frames intended for integration into the plane's fuselage (the main body of the plane, where passengers and crew sit). *Id.* ¶ 21. During that manufacturing process, Quik Tek allegedly installed defective or improperly seated rivets in one frame of the fuselage. *Id.* Quik Tek shipped the frame to Spirit. *Id.* Spirit then incorporated the frame (with its allegedly defective rivets) into the port-side fuselage section of the airplane. *Id.* ¶ 22. Spirit installed the MED plug immediately behind the allegedly defective frame and then delivered that component to Boeing. *Id.* ¶ 22. When Boeing began to assemble the aircraft, its employees identified the allegedly defective rivets and notified on-site Spirit employees responsible for replacing them. *Id.* ¶ 23. To make the fix, Boeing employees removed the MED plug, and Spirit employees replaced the identified rivets. *Id.* ¶¶ 23-24. Although Boeing employees reinstalled the MED plug in the correct location, they allegedly failed to reinstall the retention bolts needed to secure the plug to the fuselage. *Id.* ¶ 24. Boeing delivered the plane to Alaska, which placed it into commercial service. *Id.* ¶¶ 25, 27. Quik Tek completed all work in Wichita, Kansas. *Id.* ¶ 21. Spirit's manufacturing work also took place in Wichita, Kansas, and its on-site employees assisted Boeing in Renton, Washington. *Id.* ¶¶ 22, 23. Boeing completed its work in Renton, Washington. *Id.* ¶¶ 22, 23.

PAGE 4 – OPINION AND ORDER

**DISCUSSION**

**A.  Motion to Dismiss for Lack of Personal Jurisdiction**

The Court first considers Plaintiffs' well-pleaded allegations regarding Boeing, Spirit, and Quik Tek's contacts with the forum state and whether these contacts are sufficient to confer personal jurisdiction over the Moving Defendants in the District of Oregon.

**1.  Personal Jurisdiction Standards**

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Oregon's long-arm statute is co-extensive with constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4L; *Or. ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 384 (1982)). Thus, the Court need only determine whether its exercise of personal jurisdiction over the Moving Defendants would offend constitutional due process requirements. *See Boschetto*, 539 F.3d at 1015; *Hydraulic Servocontrols*, 294 Or. at 384.

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks omitted). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Id.* at 319; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. A court has general personal jurisdiction over a defendant whose contacts with the

PAGE 5 – OPINION AND ORDER

forum are "continuous and systematic" even if those contacts are unrelated to the plaintiff's claims. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable. *See Burger King*, 471 U.S. at 472-77.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283-4 (2014)). This means that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. 284 (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). The analysis also must look at the defendant's contacts with the forum state, and not with persons who reside there. *Id.* at 285. A defendant's contact with the forum state must be purposeful, and not merely "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475-76. Thus, "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290.

The Ninth Circuit applies a three-part test, commonly referred to as the minimum contacts test, to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate:

> (1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)    the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)    the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

PAGE 6 – OPINION AND ORDER

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden of satisfying the first two prongs. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If a plaintiff does that, the burden of satisfying the third prong then shifts to the defendant to present a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802).

### 2. Boeing

#### a. Jurisdictional Facts

Boeing is a Delaware corporation with its principal place of business in Virginia. FAC ¶ 9(b). Boeing manufactures commercial aircraft in the United States, including the Boeing 737 MAX series, which are assembled at its Renton, Washington facility. *Id.* ¶ 4. With respect to the airplane at issue, Boeing took possession of the fuselage (and the defective MED plug) in its Renton, Washington warehouse and completed all work in Washington. *Id.* ¶¶ 22, 23.

Boeing has been registered to do business in Oregon since 1964 and maintains a registered agent for service of process in Salem, Oregon. Boeing operates a manufacturing and machining facility in Gresham, Oregon that employs approximately 1,500 people. FAC ¶ 11(a); ECF 33 ("Tiggs Decl.") ¶¶ 11-12. Boeing employees manufacture airplane subcomponents at the Gresham facility, including some subcomponents for the 737 MAX line, which includes the 737-9. FAC ¶ 11(a); Tiggs Decl. ¶ 12-15. There are no parts manufactured at that facility, however, that relate to the MED plug (which is manufactured by Quik Tek). Tiggs Decl. ¶ 17. Nor do Boeing employees at the Gresham facility install any parts on any airplane, assemble any aircraft, perform aircraft maintenance, or work on airplane components. *Id.* ¶¶ 16-18.

Boeing also operates hangars used for painting at Portland International Airport. *Id.* ¶¶ 21-22. The hangars provide overflow painting capacity for Boeing's production facilities in

PAGE 7 – OPINION AND ORDER

Washington state. *Id.* Employees at this site paint aircraft as part of the airplane production process after assembly but before delivery to a customer. *Id.* ¶ 23. This is the only location in Oregon where Boeing ever performs work on assembled airplanes. *Id.*[2]

Boeing sells airplanes to commercial airlines, including Alaska. ECF 31 ("Mangone Decl.") ¶ 2. "None of those customers are Oregon companies." *Id.* Thus, Boeing does not sell commercial passenger airplanes, including the Boeing 737-9 MAX, to customers in Oregon. *Id.* ¶¶ 3, 5. Nor does Boeing market its airplanes in Oregon, although Boeing concedes that "some customer airlines may feature Boeing or its products as part of their own marketing campaigns" in Oregon. *Id.* ¶ 4.

### b. Application

#### i. Purposeful Availment or Direction[3]

"Boeing does not dispute that it engages in substantial business activity in [Oregon]." ECF 30 at 7 n.1. With that concession, Boeing essentially agrees that it meets the requirements for purposeful availment. *See Silk v. Bond*, 65 F.4th 445, 457-58 (9th Cir. 2023) ("A decades-long business relationship with a [forum]-based service provider clearly constitutes purposeful

---

[2] Boeing also has an office of a subsidiary company, Insitu, in Salem, Oregon, but this subsidiary company is incorporated in Washington and has its principal place of business in Tumwater, Washington. *See* ECF 43 ("Steele Decl.") Exs. 10, 11. Boeing also contributes to a domestic non-profit—the Oregon Manufacturing Innovation Center—in Scappoose, Oregon, which operates a research and development facility with the goal of "teach[ing] and train[ing] existing and future manufacturing employees." *Id.* Ex. 12. These contacts, however, are unrelated to Plaintiffs' claims.

[3] "Plaintiffs have not alleged that this Court has general jurisdiction over Boeing." ECF 42 at 13. As noted, Boeing is a Delaware corporation with its principal place of business in Arlington, Virginia. FAC ¶ 9(b). General jurisdiction is therefore proper in Delaware or Virginia. *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014). There are no "exceptional circumstances" in this case resembling those in *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952), that might support general jurisdiction in Oregon.

availment of the privilege of doing business in [the forum].”); *Fatnani v. JPMorgan Chase Bank, N.A.*, 743 F. Supp. 3d 1253, 1269 (D. Or. 2024) (“Business activity constitutes purposeful availment when that activity reaches out and creates continuing relationships and obligations in the forum state.”).

Boeing argues, however, that Plaintiffs cannot show purposeful *direction*,[4] which it asserts is the correct doctrinal approach, given that Plaintiffs’ lawsuit complains of an out-of-state tort that caused an in-state injury. To establish purposeful direction, “the defendant allegedly must have (1) committed an intentional act,[5] (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.” *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L’Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). Conduct expressly aimed at the forum state is conduct that a defendant understands will have an effect in the forum state. That is, the defendant must expressly aim its tortious conduct at, not just foresee harm resulting in, the forum state. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) (“This Court has emphasized that ‘something more’ than mere foreseeability is required in order to justify the assertion of personal jurisdiction, and that ‘something more’ means conduct expressly aimed at the forum.” (cleaned up)). Foreseeability of harm in the forum state goes to the third element, which “is satisfied when a defendant’s intentional act has ‘foreseeable effects’ in the forum.” *Id.* at 1131. “The ‘brunt’ of the harm need not be suffered in the forum state,” however, and the third element may be

---

[4] The purposeful direction test, often called the “effects” test, derives from *Calder v. Jones*, 465 U.S. 783 (1984).

[5] An intentional act is merely “an external manifestation of the actor’s intent to perform an actual, physical act in the real world.” *Washington Shoe*, 704 F.3d at 674.

established even if "the bulk of the harm" occurs outside the forum. *Yahoo! Inc.*, 433 F.3d at 1207.

Here, Boeing did not expressly aim any tortious act toward Oregon. Plaintiffs allege that Boeing was negligent in failing properly to assemble, install, and secure the MED plug and its associated components, failing to conduct adequate testing, failing properly to detect the allegedly defective condition of the MED plug, failing properly to document its inspection of the MED plug, authorizing the release of the aircraft to Alaska despite known or reasonably discoverable defects, and failing to provide adequate training to its employees "to ensure that manufacturing personnel could consistently and correctly comply with Defendant Boeing's parts removal process." FAC ¶ 45(a). Plaintiffs also claim that Boeing was negligent *per se* in failing to comply with Federal Aviation Regulations (regarding reporting, inspection, and airworthiness compliance), *id.* ¶¶ 51-62, and breached the implied warranty of merchantability, *id.* ¶¶ 90-102. All these allegedly tortious activities, however, took place in Washington state, and none of them were "aimed at" Oregon. Regarding the implied warranty of merchantability claim, Boeing does not sell any airplanes to any customers in Oregon, so its alleged breach of the implied warranty of merchantability is not "aimed at" Oregon. Although Boeing could have *foreseen* that negligent construction of an airplane might injure a passenger in Oregon (or anywhere else its planes fly), foreseeability is no substitute for expressly aiming tortious conduct at a forum. *Brayton Purcell*, 606 F.3d at 1129.

Although Boeing is correct that "[a] purposeful availment analysis is most often used in suits sounding in contract" and "[a] purposeful direction analysis, on the other hand, is most often used in suits sounding in tort," *Schwarzenegger*, 374 F.3d at 802 (citations omitted), there

PAGE 10 – OPINION AND ORDER

is no clear delineation between these tests.[6] Indeed, the Ninth Circuit later commented that "a rigid dividing line" between the tests "doesn't serve the purposes of due process." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). For this reason, "when considering specific jurisdiction, courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction." *Id.* Here, that comprehensive analysis must consider Boeing's 60-year business in Oregon. Although "purposeful direction" is wanting here, the Court finds sufficient contacts to show "purposeful availment."

### ii.  Claims Arising Out of Or Relating to Forum Contacts

The next step asks whether Plaintiffs' claims arise out of or are related to a defendant's contacts with the forum. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 264

---

[6] Before 2023, the Ninth Circuit took a more rigid approach based on where the allegedly wrongful conduct took place. *See Schwarzenegger*, 374 F.3d at 802 (explaining that purposeful availment test is more appropriate for in-state tortious conduct, while purposeful direction test is more apt for out-of-state tortious conduct). As the Ninth Circuit explained in *Freestream Aircraft*:

> [T]hose statements comparing within-forum-state versus out-of-forum-state conduct, and contract versus tort actions, suggest that a purposeful direction analysis naturally applies in suits sounding in tort where the tort was committed outside the forum state . . . . This review of the history of the effects doctrine and its place in our jurisprudence makes clear that *Paccar*, not *Calder*, is the proper starting place where an intentional tort is committed within the forum state. *Paccar* was rooted in the well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction . . . . The effects doctrine, on the other hand, makes more sense when dealing with out-of-forum tortfeasors.

*Freestream Aircraft*, 905 F.3d at 604-06.

PAGE 11 – OPINION AND ORDER

(2017). Claims "arise out of" a defendant's forum contacts if the defendant's forum activities are the but-for cause of the plaintiff's injuries. *See, e.g.*, *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023) ("Yamashita has not shown that his injuries arose out of any contacts because he has not shown but-for causation."). Claims "relate to" a defendant's forum contacts if the defendant's forum contacts make injuries like those the plaintiff suffered more likely to occur. *See, e.g.*, *Briskin v. Shopify, Inc.*, 135 F.4th 739, 760 (9th Cir. 2025) (en banc) ("Briskin's claims also 'relate to' Shopify's California contacts because Briskin alleges the kind of injury that would 'tend to be caused' by Shopify's contacts with California merchants and consumers." (quoting *Yamashita*, 62 F.4th at 505)).

Plaintiffs' claims do not "arise out of" Boeing's contacts with Oregon, because Boeing's contacts with Oregon are not the but-for cause of Plaintiffs' injuries. *See Yamashita*, 62 F.4th at 506. Plaintiffs do not allege that the airplane at issue is in any way related to Boeing's hangar painting operations. Similarly, Boeing's Gresham contacts, although associated with some parts manufacturing for the 747-9 MAX airplane, do not show but-for causation because Boeing did not manufacture the MED plug there, nor do Boeing employees at that facility manufacture any part relevant to the accident.

Further, Plaintiffs do not allege the kind of injury that would "tend to be caused" by Boeing's Oregon contacts. Plaintiffs allege that Boeing identified a defect while performing the "final assembly" of its aircraft before delivering it to Alaska. FAC ¶¶ 22-25. Plaintiffs' injuries allegedly stem from Boeing's failure to perform an adequate repair, failure properly to document that repair, and failure to preserve that documentation. *See id.* ("Defendant Boeing employees either conducted an inadequate inspection of the MED-plug reinstallation or failed to inspect it altogether."). The specific activities that injured Plaintiffs are different in kind than Boeing's

contacts with Oregon. *Cf. Briskin*, 135 F.4th at 760 (explaining that Briskin's injury is the kind that would be "'tend to be caused' by Shopify's California contacts with merchants and consumers" (quoting *Yamashita*, 62 F.4th at 505)).

Plaintiffs argue that relatedness is satisfied because Boeing participates in a nationwide airline travel market and that its Oregon contacts—painting and manufacturing parts for the 747-9 MAX—are done contemplating that its planes will fly into and out of Oregon. The Supreme Court has continuously reaffirmed that "[a] corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) (quoting *Int'l Shoe*, 326 U.S. at 318)). The Supreme Court also has rejected relaxing the relatedness standard for defendants with significant forum contacts. *Bristol-Myers Squibb*, 582 U.S. at 264.[7] Thus, Plaintiffs still must establish an "'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Id.* at 264 (quoting *Goodyear*, 564 U.S. at 919).

Plaintiffs contend that this affiliation is satisfied here because Boeing is a vehicle manufacturer that deliberately sends vehicles into Oregon, and that one such vehicle malfunctioned in Oregon. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 351 (2021). In *Ford*, the Supreme Court reviewed two lawsuits in which the plaintiffs alleged that

---

[7] In *Bristol-Myers Squibb*, the Supreme Court considered a California specific jurisdiction law with a "sliding scale approach," where "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim." 582 U.S. at 260 (citations omitted). In rejecting that law, the Court clarified that, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Id.* at 264 (quoting *Goodyear*, 564 U.S. at 919). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

defects in Ford vehicles caused injury or death within the forum states. *Id.* Ford moved to dismiss both suits for lack of personal jurisdiction, arguing that Ford did not sell the plaintiffs their cars in the forum states—other consumers introduced the cars into the forum states by selling them to the plaintiffs. *Id.* at 367. The *Ford* court rejected that argument:

> [I]f the sale of a product of a manufacturer or distributor such as [defendants] is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Id.* at 363 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The "only issue" in *Ford* was whether the defendant's forum "contacts [were] related enough to the plaintiffs' suits" to satisfy due process. *Id.* at 371. In finding that they were, the Supreme Court noted (1) that each "resident-plaintiff alleges that a defective Ford vehicle . . . caused the crash and resulting harm," and (2) that "Ford had advertised, sold, and serviced those two car models in both States for many years"—"[i]n other words, Ford had systematically served a market in [the forum states] for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.* at 365. That Ford did not sell the plaintiffs their *specific* cars did not matter, because it was Ford's marketing campaigns, dealerships, and maintenance shops within the forum states that encouraged the plaintiffs to purchase their Ford cars. *Id.* at 367-68. The Court explained that "the owners of these cars might never have bought them, and so these suits might never have arisen, except for Ford's contacts with their home States," such as, for example, the plaintiffs' seeing "ads for the car[s] in local media." *Id.* at 367.

Applying that reasoning here, *Ford* does not establish relatedness. *Ford*'s relational analysis focused on "the extreme degree that Ford advertised, sold, and serviced its vehicles in [the forum states]"—directly to and for consumers. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22

F.4th 852, 863 (9th Cir. 2022) (describing *Ford*, 592 U.S. at 364-65). Boeing, unlike Ford, does not market or sell its airplanes direct-to-consumer; its forum contacts did not "encourage" Plaintiffs to engage with Boeing. *See Ford*, 592 U.S. at 365. Unlike Ford's advertisements and dealerships, which encouraged the *Ford* plaintiffs to purchase their vehicles and made their injuries more likely, the existence of Boeing's Gresham manufacturing facility and paint hangars did not make Plaintiffs' taking their flight or being injured on that flight any more or less likely.

To that end, in *Yamashita*, the Ninth Circuit found that a plaintiff failed plausibly to allege personal jurisdiction when he was injured by a portable stand-alone battery and the defendant had forum contacts related to solar batteries. *See* 62 F.4th at 506-07. The court said that those two types of batteries were "as different as sedans and 18-wheelers" and concluded that "[t]here is little reason to believe that" the defendant's forum contacts "have anything to do with" the residents of the forum state acquiring the type of battery that injured plaintiff. *Id.* at 507. The same is true here for Boeing's manufacturing of plane parts unrelated to the allegedly defective MED plug (made by Quik Tek). In distinguishing *Ford*, the *Yamashita* court explained that "*Ford* found specific jurisdiction because Ford sold the relevant models to consumers in the forum states, not because it shipped raw materials, or even completed cars, through those states." *Id.* at 506. Boeing's forum-related contacts in Oregon—manufacturing component parts that are later shipped to other states for assembly—are like the *Yamashita* court's example of shipping raw materials through Oregon.

That Boeing's plane malfunctioned in Oregon airspace is a "random [and] fortuitous" contact with Oregon that really is created by the "contacts between the plaintiff (or third parties) and the forum." *See Walden*, 571 U.S. at 284, 286. Because "the relationship" between the claims and the forum state "must arise out of contacts that the defendant himself creates with the

PAGE 15 – OPINION AND ORDER

forum," *id*. at 284 (quotation marks omitted), there is no relatedness and the exercise of personal jurisdiction over Boeing would not comport with due process.

### iii. Reasonableness

Even if Plaintiffs plausibly alleged relatedness, the Court would not find the exercise of jurisdiction reasonable. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002) (listing the factors the Ninth Circuit considers "[i]n determining whether the exercise of jurisdiction comports with fair play and substantial justice, and is therefore reasonable (cleaned up)). Principal among the factors that courts in the Ninth Circuit consider are "the extent of the defendants' purposeful injection into the forum state's affairs" and "the forum state's interest in adjudicating the dispute." *See id*. Here, as discussed, Boeing did not purposefully direct any tortious act into Oregon, and thus Oregon has little interest in adjudicating the dispute. Boeing did not decide that the subject aircraft would be in use in Oregon, nor was Flight 1282 the first flight the aircraft took after Boeing's alleged negligence in the "final assembly" phase.[8]

Boeing also did not sell the subject aircraft to an Oregon customer or airline, nor did it foresee that it would fly into, out of, or over Oregon more so than any other state. It is pure happenstance that Plaintiff's injuries occurred in Oregon as opposed to another state on the plane's flight path. Conversely, other jurisdictions have a strong interest in litigating this dispute. *See id.* (other reasonableness factors include "the extent of conflict with the sovereignty of the defendant's state," "the most efficient judicial resolution of the [dispute]," and "the existence of an alternative forum"). Fourteen cases involving 105 plaintiffs from Flight 1282 have already

---

[8] Nor was it the hundredth. After Alaska placed it in commercial service in November 2023, the plane took 154 revenue flights before Alaska Airlines Flight 1282 in January 2024. FAC ¶ 1, 27. During those flights, the unsecured MED plug gradually migrated upward, allegedly leaving visible scoring and other marks on the airplane. *Id.* ¶ 27.

been filed in Washington. *See* ECF 30 at 20 n.4 (collecting cases). Alaska, Boeing, and Spirit have admitted that they are subject to personal jurisdiction in Washington. *See id.* at 21 n.5 (explaining same).[9] Thus, there is an alternative forum available where most of the evidence and witnesses are available pertaining to the allegedly tortious conduct, and it would be unreasonable for this Court to exercise personal jurisdiction over Boeing under these circumstances.

### 3. Quik Tek

#### a. Jurisdictional Facts

Quik Tek is a Kansas limited liability company whose sole members are citizens of the State of Kansas, and it maintains its principal place of business in Wichita, Kansas. ECF 17 ¶ 9(d). Quik Tek manufactures aerospace components and advertises that it provides fabricated components and services to "local, regional, national and international customers," including aerospace companies such as Boeing. Quik Tek also represents that it operates an industry certified aerospace quality-management system and specializes in precision components intended for integration into commercial-aircraft production programs.

#### b. Application

Unlike Boeing, Quik Tek did not purposefully avail itself of the privilege of doing business in Oregon or purposefully direct any allegedly tortious activity toward Oregon. Indeed, Plaintiffs do not allege that Quik Tek does any business in Oregon. Instead, Plaintiffs contend that Quik Tek is a member of the national market for airplane parts. But nationwide contacts are not purposeful contacts with the forum state. *See LNS Enters.*, 22 F.4th at 862. "The placement of a product into the stream of commerce, without more, is not an act purposefully directed

---

[9] Quik Tek represented that it has preliminarily settled its claims with Plaintiffs (ECF 57), so the fact that it has not conceded personal jurisdiction in Washington does not concern the Court.

toward a forum state," even if the defendant is "aware[ ] that the stream of commerce may or will sweep the product into the forum state." *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 112 (1987) (O'Connor, J., plurality op.); *see also Yamashita*, 62 F.4th at 503 (reaffirming *Holland America Line* rule and describing *Asahi Metal Industry* plurality opinion as "finding no purposeful availment in part because defendant did not create, control, or employ the distribution system that brought its product to the forum state" (cleaned up)). If Oregon courts could exercise specific personal jurisdiction over Quik Tek for its participation in nationwide air travel industry, every state could. As with Boeing's, Quik Tek's contacts with Oregon are "random, fortuitous, [and] attenuated," and are animated primarily by Plaintiffs' contacts with Oregon. *See Walden*, 571 U.S. at 284, 286 (Nevada citizens cannot sue Georgia DEA agent whose seizure of their property is only felt in Nevada when Georgia DEA agent has no contact with Nevada). There is no personal jurisdiction over Quik Tek in this district.

### 4. Spirit

#### a. Jurisdictional Facts

Spirit is a Delaware corporation with its principal place of business in Wichita, Kansas. ECF 17 ¶ 9(c). Spirit has conducted continuous business activity in Oregon for more than fifteen years, including maintaining an active Oregon business registration and a registered agent for service of process in Salem, Oregon. Spirit is one of the world's largest manufacturers and suppliers of commercial-aircraft fuselage assemblies and structural components, including components incorporated into Boeing 737 MAX aircraft. Spirit supplies these aircraft components directly into Boeing's nationwide production system with the expectation that aircraft incorporating its components will be placed into interstate commercial service and will routinely operate throughout the United States. Spirit also delivers a small set of airplane parts to

PAGE 18 – OPINION AND ORDER

Boeing's Gresham facility. *See* ECF 23 ("Robert Decl.") ¶ 20-23. These parts are not marketed or sold in Oregon; they are sold to Boeing in Washington. *Id*. ¶¶ 17, 20, 22. Spirit publicly represents that its components are supplied to major aircraft Original Equipment Manufacturers and first-tier aerospace companies, including Boeing, and are routinely used in commercial aircraft serving national and international markets.

### b.  Application

Plaintiffs allege that "[t]he MED plug assembly incorporated into the Incident Aircraft was designed, manufactured, and supplied by Defendant Spirit and was purposefully placed into the national stream of commerce with the reasonable expectation that it would be installed on commercial aircraft operating in and through Oregon." ECF 17 ¶ 11(b). This, however, is insufficient to create personal jurisdiction in Oregon under either purposeful availment or purposeful direction. First, "Plaintiffs' reliance on the fact that [Spirit] is registered to conduct business in Oregon is misplaced, as such registration, by itself, cannot form the basis for jurisdiction over a defendant." *Halsey v. Airbus Helicopters S.A.S.*, 2025 WL 318744, at *4 (D. Or. Jan. 28, 2025) (citing *Figueroa v. BNSF Ry. Co.*, 361 Or. 142, 159 (2017) (en banc) ("The legislature did not intend that, in appointing a registered agent, a foreign corporation also would impliedly consent to the jurisdiction of the Oregon courts.")); *see also King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 575 (9th Cir. 2011) ("[I]n the absence of broader statutory language or state court interpretations, the appointment of an agent for the service of process is, by itself, insufficient to subject foreign corporations to suits for business transacted elsewhere.").

Second, Plaintiffs fail to allege any specific connection with Oregon. Spirit states that it sometimes sends parts to Boeing's Gresham facility before they are eventually sold to Boeing in Washington. These contacts with Oregon may qualify as "consummating some transaction with the forum." *See Schwarzenegger*, 374 F.3d at 802. After performing the comprehensive analysis

PAGE 19 – OPINION AND ORDER

described in *Cranfield Aerospace*, however, the Cour finds that these occasional sales (shipping parts through Oregon into Washington) are the "extent of [Spirit's] contacts with the forum state," which suggests that the first element of the minimum contacts test is not met. *See* 71 F.4th at 1162. This is particularly so because Spirit did not expressly aim any tortious act toward Oregon that caused harm that Spirit knew would likely be suffered in Oregon. *See Yahoo! Inc.*, 433 F.3d at 1206.

Third, even if the first prong of the minimum contacts test is met by Spirit's occasional sending of parts to Boeing's Gresham facility, the *Yamashita* court rejected the premise that "a district court can exercise personal jurisdiction over an out of-state manufacturer that has various forum contacts but does not sell the allegedly defective product as a stand-alone product to in-state consumers." 62 F.4th at 501. Spirit's occasionally sending its products to Boeing's Oregon factory for eventual sale to Boeing in Washington is akin to a seller shipping a product through a forum state on a shipping route. *Cf. id.* at 506 ("*Ford* found specific jurisdiction because Ford sold the relevant models to consumers in the forum states, not because it shipped raw materials, or even completed cars, through those states."). There is no "relatedness" here because Spirit's *de minimis* Oregon contacts of shipping parts to Boeing for eventual sale in Washington are not the kind of forum contacts that would tend to cause injuries like Plaintiffs'. For all these reasons, this Court lacks personal jurisdiction over Spirit.

## B. Plaintiffs' Request for Jurisdictional Discovery

A district court retains discretion to allow jurisdictional discovery. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). "The district court's refusal to provide such discovery will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Boschetto*, 539 F.3d at 1020 (cleaned up).

A few general principles govern the Court's exercise of its discretion in this context. "Jurisdictional discovery 'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Yamashita*, 62 F.4th at 507 (quoting *Laub*, 342 F.3d at 1093). Yet "a mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery." *LNS Enters.*, 22 F.4th at 864-65 (cleaned up). Thus, a denial of jurisdictional discovery is not an abuse of discretion when "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Laub*, 342 F.3d at 1093 (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

Plaintiffs request targeted jurisdictional discovery as to Boeing, Quik Tek, and Spirit. They request:

- From Boeing: (1) the categories of 737 MAX/737-9 subcomponents produced at Boeing's Gresham facility and the functional role those components play in the 737 MAX production system and aircraft safety-critical assemblies; (2) Boeing's internal allocation of 737 MAX production-stage work to the PDX paint hangars, including any quality, inspection, acceptance, and signoff protocols used there; (3) Boeing's Oregon-based engineering, quality, or supplier-management functions supporting the 737 MAX production system; and (4) Boeing's internal knowledge and expectation of Alaska's use of 737-9 aircraft on Oregon-originating and Oregon-destination routes, including communications, fleet deployment expectations, and operational integration relevant to foreseeability and forum service.

PAGE 21 – OPINION AND ORDER

- From Quik Tek: (1) the volume, frequency, and duration of Quik Tek's production of MED plug components for Boeing aircraft programs; (2) the contractual and regulatory obligations governing Quik Tek's manufacturing, inspection, and quality-assurance responsibilities; (3) Quik Tek's knowledge and expectations regarding the placement of aircraft incorporating its components into nationwide commercial service, including service to and through Oregon; (4) communications with Spirit or Boeing concerning component conformity, rework, removal, or downstream integration; (5) Quik Tek's role within the FAA-regulated certification and traceability framework governing safety-critical aircraft components; (6) bills of lading, ship-to addresses, delivery terms (FOB), and routing showing shipments to Oregon; (7) Quik Tek quality/traceability docs acknowledging the components are for 737 aircraft placed into nationwide service, including known operation into Oregon markets; (8) any program docs that identify Alaska Airlines / PDX routes, maintenance bases, or delivery acceptance involving Oregon operations; and (9) Quik Tek employees traveling to Oregon for supplier audits, MRB, quality escapes, customer support, AOG events, etc.

- From Spirit: (1) the categories, volume, and frequency of 737 MAX/737-9 components Spirit delivered into Oregon, including deliveries to Boeing's Gresham facility, and the functional role those components play in the aircraft's structure, safety systems, and certification; (2) Spirit's contractual obligations requiring or contemplating deliveries into Oregon, including quality, inspection, acceptance, and signoff responsibilities associated with Oregon-delivered components; (3) Spirit's internal allocation of production, quality-assurance, and supplier-management

PAGE 22 – OPINION AND ORDER

responsibilities across its facilities in relation to Boeing's Oregon operations; (4) Spirit's knowledge, expectations, and communications regarding the placement of Spirit-supplied components into 737-9 aircraft intended for, and routinely operated in, Oregon by Alaska Airlines; and (5) Spirit's compliance obligations under Federal Aviation Regulations as they relate to components delivered into Oregon and incorporated into aircraft placed into commercial service there.

Because these discovery requests are unlikely to show sufficient facts to establish a basis for personal jurisdiction, the Court denies jurisdictional discovery. No facts relevant to the question of personal jurisdiction are in dispute—Plaintiffs do not dispute Boeing's jurisdictional facts in the Tiggs or Mangone Declarations, for example, which confirm that employees at Boeing's Gresham facility "do not install any parts on any aircraft or assemble any aircraft," "[n]one of the parts manufactured in Gresham are connected in any way to the MED plug used on a 737-9, which is manufactured and assembled by Spirit AeroSystems in Malaysia and Kansas," and "[e]mployees at this facility do not perform any work related to airplane maintenance and do not work on any components of an airplane after it has been delivered to the customer." Tiggs Decl. ¶¶ 16-19. At Boeing's paint hangar facility, "[e]mployees . . . do not perform maintenance activities on assembled airplanes for Boeing's customers," but rather "paint aircraft as part of the airplane production process after assembly." *Id.* ¶¶ 23, 24. "The Boeing Gresham machining center and painting facility at Portland International Airport are the only Boeing facilities in Oregon." *Id.* ¶ 29. Moreover, employees in Portland "did not perform any other work on the subject airplane, including work on the MED plug on that airplane, prior to January 5, 2024," nor did employees in Gresham perform any work "related to the MED plug on the subject airplane." *Id.* ¶¶ 28, 20.

As explained above, Plaintiffs fail sufficiently to allege that the Court has personal jurisdiction over Boeing because the company's Oregon contacts are different in kind than its injury-causing conduct at issue—*i.e.*, Plaintiffs' claims are not "related to" Boeing's forum contacts. Plaintiffs allege that Boeing identified a defect while performing the "final assembly" of its aircraft before delivering it to Alaska. FAC ¶¶ 22-25. As noted, Plaintiffs' injuries stem from Boeing's alleged failure to perform an adequate repair, failure properly to document that repair, and failure to preserve that documentation. *See id.* ("Defendant Boeing employees either conducted an inadequate inspection of the MED-plug reinstallation or failed to inspect it altogether."). Boeing's forum contacts through the Gresham facility are assembly of small component parts; its forum contacts at the airport are painting airplanes. Plaintiffs' "mere hunch" that discovery might reveal that Boeing has additional forum contacts related to its claims (*e.g.*, forum contacts related to quality checks of airplanes) is not a sufficient reason to grant jurisdictional discovery. *See Yamashita*, 62 F.4th at 507 (quotation omitted).

The requests made with respect to Quik Tek and Spirit are similarly irrelevant to establishing personal jurisdiction over these Defendants. Establishing that these companies knew by creating airplane components that their parts would be used in Oregon (and throughout the United States) is probative only to an impermissible stream-of-commerce theory of personal jurisdiction. *See Holland Am. Line Inc.*, 485 F.3d at 459.

## C. Transfer versus Dismissal; and Severance versus Transfer of Entire Case

Plaintiffs request that the Court order transfer under 28 U.S.C. § 1406 or § 1631 rather than dismiss the action.[10] As explained below, the Court agrees that transfer in lieu of dismissal

---

[10] A court need not have personal jurisdiction over a defendant to order transfer. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962).

under § 1631 is in the interest of justice. Plaintiffs also request that the Court sever their claims against Alaska and retain jurisdiction over that lawsuit. Alaska has waived personal jurisdiction and did not object to venue. Thus, Plaintiffs argue, it is in the interest of justice to maintain jurisdiction over that Defendant. Alaska, however, opposes severance and argues that if the Court determines that it lacks personal jurisdiction over Boeing, Spirit, or Quik Tek, then transfer to the United States District Court for the Western District of Washington would be more appropriate. ECF 52 at 2. Alaska states that Boeing, Spirit, and Alaska already are parties to multiple lawsuits in the Western District of Washington arising out of the same Flight 1282 and that all three have conceded personal jurisdiction over them relating to claims arising out of that flight. *Id.* The Court agrees and finds that severance would not be in the interest of justice. Accordingly, the Court orders transfer of the entire case to the Western District of Washington.

Transfer under 28 U.S.C. § 1406 is appropriate only if the case is in the "wrong division or district"—that is, if the lawsuit is in the wrong venue.[11] *See* 14D WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3827 (4th ed. 2026) ("A prerequisite to invoking Section 1406(a) is that the venue chosen by the plaintiff is improper."). Ordinarily, transfer under § 1406 is typically "proper only if the defendant has moved to dismiss (or transfer) for improper

---

[11] Venue is proper in:

> [1] a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [2] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or [3] if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

venue." *Id.* Because no defendant has moved to dismiss on this basis,[12] the Court discusses the

alternative statutory basis for transfer.

Section 1631 is a broader jurisdictional statute directing federal courts, "in the interest of

justice," to transfer an "action or appeal to any other such court . . . in which the action or appeal

could have been brought at the time it was filed," if the "court finds that there is a want of

jurisdiction." Here, the Court lacks *personal* jurisdiction over Boeing, Quik Tek, and Spirit.

There is a circuit split with respect to whether a lack of personal jurisdiction supports transfer

under § 1631. Courts in the Ninth Circuit and in this District generally have concluded that it

does. *See, e.g.*, *Marshall v. Hipcamp, Inc.*, 2023 WL 8627671, at *7 (D. Or. Nov. 8, 2023)

(recommending transfer under § 1631 because court lacked personal jurisdiction over defendant),

*adopted*, 2023 WL 8622344, at *1 (D. Or. Dec. 12, 2023) (directing transfer).[13]

---

[12] Boeing argues for the first time on reply that venue is improper in this District because no defendant is a resident of Oregon and "there is, pursuant to § 1391(2), a forum in which a substantial part of the events giving rise to the claim occurred: Washington." *See* ECF 69 at 15 n.9. Boeing adds that there is a "potential for transfer under 28 U.S.C. § 1631." *Id.* at 14 n.8. Because the Court finds that transfer is justified under § 1631, there is no need to discuss Boeing's late-asserted argument under § 1406.

[13] *See also Kulchin Found. Drilling Co. v. Axis Specialty Ins. Co.*, 2007 WL 858068, at *3-4 (W.D. Wash. Mar. 16, 2007) (discussing split in authority before concluding that "the trend in the Ninth Circuit is toward the more inclusive interpretation of the statute to encompass personal as well as subject matter jurisdiction"); *Pamplona ex rel. Pamplona v. Hernandez*, 2009 WL 578578, at *2 (S.D. Cal. Mar. 5, 2009) (same; citing *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (discussing circuit split)). A majority of the Circuit Courts agree that § 1631 transfer is appropriate for lack of personal jurisdiction. *See Roman*, 340 F.3d at 328; 15 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3842 & n.21, n.27.20-.80 (4th ed. 2026).

But see *Quicksilver Air, Inc. v. Helicopter Engine Repair Overhaul Servs., Inc.*, 2013 WL 12122582, at *6 (D. Idaho Jan. 18, 2013) (declining to apply § 1631 after finding lack of personal jurisdiction); *Allen v. Conagra Foods, Inc.*, 2019 WL 5191009, at *3-4 (N.D. Cal. Oct. 15, 2019) (same). Both *Quicksilver* and *Allen* refer to dicta in Ninth Circuit cases that refer only to subject matter jurisdiction. *Kolek v. Engen*, 869 F.2d 1281, 1284 (9th Cir. 1989) ("Section 1631 authorizes federal courts to transfer appeals in civil actions in order to cure a lack of subject matter or appellate jurisdiction."); *Gherebi v. Bush*, 352 F.3d 1278, 1302 n.30 (9th Cir. 2003) (stating in dicta that "§ 1631 relates to subject matter jurisdiction"), *cert. granted,*

In *Gray & Company*, the Ninth Circuit held that the "defendants' contacts with Oregon [were] not sufficient to justify the exercise of personal jurisdiction," and thus remanded the case to the district court "with instructions to dismiss the action or, if in the interest of justice, to transfer to the Northern District of California or Northern District of Illinois pursuant to 28 U.S.C. § 1631." 913 F.2d at 761-62. Several unpublished cases from the Ninth Circuit also contain similar instructions,[14] with one panel holding that the "district court abused its discretion in failing to determine whether the action could have been brought in the Eastern District of California" pursuant to § 1631 after affirming the district court's finding that it lacked personal jurisdiction over the defendants. *See Harrell v. Kepreos*, 175 F. App'x 793, 794 (9th Cir. 2006).

That § 1631 covers personal jurisdiction corresponds with the statute's plain text, which speaks broadly to "jurisdiction," not specifically to subject-matter jurisdiction. *See Torres v. Barr*, 976 F.3d 918, 924 (9th Cir. 2020) ("We start with the plain meaning of the statute."). In Ninth Circuit and Supreme Court precedent, "'[j]urisdiction' consists of subject-matter jurisdiction and personal jurisdiction." *Theo. H. Davies & Co., Ltd. v. Republic of Marshall*

---

*judgment vacated*, 542 U.S. 952 (2004). These cases do not exclude the possibility that personal jurisdiction *also* justifies § 1631 transfer, particularly when read in context of the other Ninth Circuit cases the Court cites. *Quicksilver* also relies on the statute's legislative history, which Wright & Miller describe as "quite clear" in favor of the exclusive subject matter jurisdiction position. *See* 15 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3842 & n.26 (4th ed. 2026).

[14] *See also E.J. Bartells Co. v. Sw. Marine Inc.*, 70 F.3d 1277, 1995 WL 710579, at *2 (9th Cir. Nov. 30, 1995) (holding that district court committed clear error in failing to award attorney fees under state statute that permitted fees for foreign defendant's successful dismissal for lack of personal jurisdiction after "transferr[ing] the case . . . pursuant to 28 U.S.C. § 1631, which by its terms applies only when the court 'finds that there is a want of jurisdiction'"); *Gilliam v. Givens*, 12 F.3d 1106, 1193 WL 483442, at *1 (9th Cir. Nov. 22, 1993) (affirming finding of no personal jurisdiction, but reversing district court's judgment and remanding for consideration of "whether the interests of justice require transferring these actions to a court with personal jurisdiction over the defendants" under § 1631).

*Islands*, 174 F.3d 969, 972 (9th Cir. 1998); *see also Henderson ex rel. Henderson v.*

*Shinseki*, 562 U.S. 428, 435 (2011) ("[A] rule should not be referred to as jurisdictional unless it

governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction.").

Although "[p]ersonal jurisdiction differs from subject matter jurisdiction in some important

ways," the same "underlying logic applies equally to both types of jurisdiction: if the court lacks

power to act, then it may not pronounce a binding judgment on the merits—regardless of the

reason for the court's lack of authority to act." *Ruiz v. Snohomish Cnty. Pub. Util. Dist.*

*No. 1*, 824 F.3d 1161, 1166 n.4 (9th Cir. 2016). Thus, having reviewed the plain text of the

statute, Ninth Circuit precedent, and the growing body of caselaw in the same direction, the

Court finds that the Ninth Circuit would likely hold that § 1631 transfer may be considered when

a court lacks personal jurisdiction.

The Court next proceeds to determine whether transfer is in the interest of justice in this

case. "In general, [the Ninth Circuit] has taken a broad view of when transfer is appropriate,

recognizing that '[n]ormally transfer will be in the interest of justice because normally dismissal

of an action that could be brought elsewhere is time-consuming and justice-defeating.'" *Amity*

*Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (quoting *Miller v.*

*Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990)) (second alteration in original; quotation marks

omitted). It has "emphasized that transfer will often serve as a means to prevent the injustice of

penalizing a party for an honest procedural mistake," *id.*, and therefore ordinarily instructs courts

to "find transfer to be in the interest of justice where . . . the plaintiffs appear to have been

unaware of or confused about the proper forum in which to file [their] action," *Munns v.*

*Kerry*, 782 F.3d 402, 414 (9th Cir. 2015) (quotation marks omitted). Additionally, "it is in the

interest of justice to transfer a case when the time period has elapsed to file in the appropriate court." *Amity Rubberized Pen Co.*, 793 F.3d at 996.

Here, transfer is in the interest of justice. Plaintiffs timely filed this action approximately three months before the expiration of the applicable statute of limitations. Plaintiffs also agreed to extend the deadlines for Defendants to respond to the Complaint until after the limitations period expired. The limitations period expired on all claims in January 2026, and Plaintiffs would therefore be unable to refile their claims in a different district absent transfer. *See id.*; *Goldlawr*, 369 U.S. at 467 (transfer appropriate when dismissal will be "justice-defeating"); *cf. McKeel v. Islamic Republic of Iran*, 722 F.2d 582, 591 (9th Cir. 1983) (transfer was "not necessary to advance the interests of justice" because party could refile).

Plaintiffs request that the Court retain jurisdiction over their claims against Alaska because that Defendant consented to personal jurisdiction by answering Plaintiffs' lawsuit without raising that defense. Under § 1631, a district court may only transfer an entire "action" and may not split claims or parties. Because "severance creates two separate actions,"[15] courts seeking to transfer certain claims or parties should first sever those claims or parties so that the court may transfer an entire action without the severed claim or party. *See Munns*, 782 F.3d at 415 (directing court on remand to sever certain claims and then transfer them under § 1631); *Baxter Bailey & Assocs., Inc. v. Niagara Bottling, LLC*, 2025 WL 1543602, at *2 (C.D. Cal. May 5, 2025) (discussing severance to facilitate transfer); *see also, e.g.*, 15 WRIGHT & MILLER'S

---

[15] *Esa ex rel. NortonLifeLock, Inc. v. NortonLifeLock, Inc.*, 2022 WL 14002189, at *1 (9th Cir. Oct. 24, 2022) (unpublished) (citing *Munns v. Kerry*, 782 F.3d 402, 415 (9th Cir. 2015)). In *Munns*, the Ninth Circuit "instruct[ed] [the] district court on remand to, first, sever certain claims and, second, transfer them to the Court of Federal Claims, in compliance with [§ 1631]," which is "applicable only to the transfer of an entire 'civil action.'" *See Esa*, 2022 WL 14002189, at *1 (summarizing disposition of *Munns*, 782 F.3d at 415).

PAGE 29 – OPINION AND ORDER

FEDERAL PRACTICE & PROCEDURE § 3842 n.26 (4th ed. 2026) (collecting cases). Thus, severance is a prerequisite to maintaining jurisdiction over Plaintiffs' claim against Alaska.

Rule 21 of the Federal Rules of Civil Procedure provides that "[t]he court may . . . sever any claim against a party." Like § 1631, Rule 21 is "concerned with the interests of justice." *Baxter Bailey & Assocs.*, 2025 WL 1543602, at *2. Because severance would result in splitting Plaintiffs' claims into two actions, one of which would then be transferred to another district, the Court considers the interests of justice from the perspectives of Plaintiffs and Defendant Alaska, as well as judicial economy, efficiency, and public perception.

Plaintiffs have a general interest in selecting the forum in which they litigate. *See Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. ----, 146 S. Ct. 724, 733 (2026).[16] This lends some support to Plaintiffs' request for severance. But a court should also consider any injustice imposed on other parties. *Grain Millers, Inc. v. Pac. Flexpak, Co.*, 2008 WL 550124, at *2 (D. Or. Feb. 26, 2008). If the Court were to sever this case in furtherance of a partial transfer, the relative injustice imposed on Alaska would lend some support to denying Plaintiffs' request because Alaska already is litigating similar lawsuits arising from this accident in the Western District of Washington. In addition, judicial economy and efficient militates in favor of denying severance and transferring the entire action. *See id.* Finally, and not insignificantly, transferring Plaintiffs' claims against Boeing, Quik Tek, and Spirit to another district while resolving Plaintiffs' claims against Alaska in this district "risks the possibility of inconsistent rulings and verdicts," which "would undermine public confidence in our legal system." *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 2021 WL 2355405, at *7 (D. Or. June 9, 2021).

---

[16] *Hain Celestial* set forth rules of general applicability for Rule 21 in cases originally filed in state court; the Supreme Court "expresse[d] no view as to Rule 21's role in cases originally filed by plaintiffs in federal court," such as this one. *See* 146 S. Ct. at 733 n.5.

PAGE 30 – OPINION AND ORDER

Public confidence is a public interest factor that a court must consider. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) (explaining that the public interest factors include "systemic integrity and fairness"); *see also* 15 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3854.1 (4th ed. 2026) (stating that the "interest of justice" is a public interest factor). Considering all these factors, the Court finds that denying severance and transferring the entirety of this action best serves the interest of justice.

## CONCLUSION

The Court lacks personal jurisdiction over Defendants The Boeing Company, Spirit AeroSystems, Inc., and Quik Tek Machining, LLC. The Court, however, denies the pending Motions to Dismiss, ECF 20, ECF 22, and ECF 30, because transfer to a different judicial district is in the interest of justice. The Court also denies Plaintiffs' suggestion of severance. Instead, pursuant to 28 U.S.C. § 1631, the Court directs the Clerk of the Court promptly to transfer the entirety of this case, including Plaintiffs' claims against Alaska Airlines, Inc., to the United States District Court for the Western District of Washington.

**IT IS SO ORDERED.**

DATED this 13th day of April, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge